*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RAYMOND GUZALL III and RAYMOND
GUZALL III, PC,

        Plaintiffs-Appellants,

v

DAVID WARREN and JOELSON ROSENBERG,
PLC,

        Defendants,

and

BARRY A. SEIFMAN and BARRY A. SEIFMAN,
PC,

        Defendants-Appellees.

UNPUBLISHED
July 8, 2021

No. 352004
Wayne Circuit Court
LC No. 18-000343-CB

Before: REDFORD, P.J., and BORRELLO and TUKEL, JJ.

PER CURIAM.

Plaintiffs, Raymond Guzall III, and Raymond Guzall III, PC, appeal as of right the trial court's order awarding attorney fees and costs to defendants, Barry A. Seifman and Barry A. Seifman, PC.[1] The trial court awarded the attorney fees pursuant to this Court's prior order, imposing sanctions for plaintiffs' previous vexatious appeal in this Court in Docket No. 344507 and remanding for a determination of an appropriate award of sanctions. *Guzall v Warren*, unpublished order of the Court of Appeals, entered September 12, 2019 (Docket Nos. 344507 & 345190). On appeal, plaintiffs challenge this Court's order awarding sanctions to defendants and the amount of attorney fees awarded to defendants. We disagree and, for the reasons stated in this opinion, affirm the trial court's attorney fee award to defendants.

---

[1] The other defendants, David Warren and Joelson Rosenberg, PLC, are not parties to this appeal.

# I. UNDERLYING FACTS

## A. BACKGROUND THROUGH THE PRIOR APPEAL

This case arises from a dispute over attorney fees in a civil employment discrimination case; the background facts can be found in this Court's prior opinions. As summarized in *Harris v Greektown Superholdings, Inc*, unpublished per curiam opinion of the Court of Appeals, issued August 20, 2015 (Docket No. 322088) (*Harris I*), pp 1-2:

> In March 2012, [Diane] Harris, assisted by attorney Raymond Guzall III, filed a lawsuit against Greektown Casino, LLC, Greektown Superholdings, Inc., and Carolyn Simancik (collectively "Greektown Casino"), asserting claims of racial discrimination, hostile work environment, age discrimination, retaliation, and intentional infliction of emotional distress. In November 2013, a jury returned a verdict in favor of Harris for $600,066. Thereafter, Harris filed a motion requesting entry of judgment and an award of attorney fees and costs.

> After the jury returned its verdict but before the trial court entered judgment or awarded attorney fees or costs, appellees, Barry A. Seifman and Barry A. Seifman, P.C., formerly known as Seifman & Guzall, P.C., filed a motion to intervene in Harris's case, asserting a right to any attorney fees awarded. According to appellees, in 2006, Guzall and appellees executed a stockholder agreement expressly providing that in the event Guzall ended his employment with Seifman & Guzall, P.C., all client files would remain the property of the firm. In February 2012, Guzall tendered notice that he was leaving the firm. Appellees asserted that when Guzall left, he took several client files and court documents, including the file regarding Harris's case, in violation of the 2006 stockholder agreement.

> Shortly after Guzall left the firm, appellees initiated litigation against him in the Oakland Circuit Court. In March 2012, the Oakland Circuit Court issued a stipulated order stating, "Any attorney fees and or cost reimbursements . . . paid to Plaintiffs or Defendants, whether directly or indirectly, from or on behalf of any of the following clients, shall be deposited into an interest bearing escrow account maintained by the Court." Harris was not listed among the "following clients" covered by the Oakland Circuit Court's March 2012 order. According to appellees, Harris was not listed because Guzall improperly concealed his relationship with Harris. Therefore, appellees argued, intervention in Harris's case was necessary to protect their interest in any attorney fees awarded.

> Following a hearing, the trial court granted appellees' motion to intervene and ordered that any attorney fees awarded would be held in escrow with the Wayne Circuit Court. In January 2014, appellees requested that the trial court refer the issue of entitlement to attorney fees to the Oakland Circuit Court, where the other disputes between Guzall and appellees were pending. The trial court granted appellees' motion and referred the attorney fee dispute to the Oakland Circuit Court. Thereafter, the [c]ourt entered judgment on Harris's jury verdict, awarded $50,000 in attorney fees, and dismissed the case with prejudice.

The plaintiff, Harris, appealed as of right, arguing that it was improper for the trial court to have allowed appellees to intervene in order to assert an interest in any of the awarded attorney fees. *Id*. at 2. This Court agreed that appellees did not have standing to intervene, but it also ruled that because Harris lacked standing to appeal, it could not grant her the relief she sought. *Id*. at 3-4. This Court determined that because Harris was not an aggrieved party, she could not contest a matter that did not adversely affect her. *Id*. at 4. This Court noted that attorney Guzall was the aggrieved party with standing to appeal, but he did not. *Id*. As a result, this Court held that it lacked jurisdiction over the appeal and dismissed it. *Id*.

After this Court dismissed the appeal,

> the trial court scheduled and began conducting an evidentiary hearing to determine the distribution of attorney fees in the action, rejecting numerous arguments posed by Guzall before and during the hearing. With a motion to disqualify the trial judge pending, Guzall refused to appear at a scheduled continuation of the hearing until the disqualification motion was heard and decided. In response, the trial court held Guzall in contempt, striking all of his filings related to the attorney-fee dispute, defaulting him for his contemptuous conduct, and releasing the disputed attorney fees, which were being held in escrow, to Seifman. [*Harris v Greektown Superholdings, Inc.*, unpublished per curiam opinion of the Court of Appeals, issued October 31, 2017 (Docket No. 331652) (*Harris II*), p 2.]

Guzall and Harris appealed, and this Court affirmed the finding of contempt and the associated sanctions striking Guzall's pleadings and defaulting him. *Id*. at 3-4.[2]

> While Guzall's application for leave to appeal this Court's decision in *Harris II* was pending in the Supreme Court, Guzall filed this action.[3] Guzall's complaint accused all defendants of (1) tortious interference with contract, (2) tortious interference with business relationship or expectancy, (3) statutory conversion, (4) unjust enrichment, (5) breach of contract, (6) conspiracy, and (7) intentional infliction of emotional distress. In response, Seifman and Warren each filed a motion for summary disposition under MCR 2.116(C)(7), (8) and (10), arguing that Guzall's claims were barred by collateral estoppel, that this suit was an impermissible collateral attack on the trial court's contempt order, that Guzall's own wrongful conduct barred his attempts at recovery, and that Guzall had failed to state a claim on which relief could be granted. Defendants additionally requested that the trial court sanction Guzall for filing a frivolous pleading. Dispensing with oral argument, the trial court agreed with defendants that summary disposition was warranted, finding Guzall's claims to be barred by collateral estoppel and the collateral attack doctrine, as well as legally deficient. The trial court also held that Guzall's complaint was clearly frivolous and awarded sanctions under MCR 2.114

---

[2] The Michigan Supreme Court declined to grant leave to appeal. *Harris v Greektown Superholdings, Inc.*, 503 Mich 871 (2018).

[3] To be clear, that action also is the action in this case on appeal.

and MCL 600.2591. The trial court directed defendants to file new motions for sanctions along with documentation of their attorney fees and an analysis of the reasonableness of those fees.

> Defendants filed such motions. The trial court held a hearing on defendants' motions on July 20, 2018. The trial court made findings concerning the reasonableness of the requested attorney fees under *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281-282; 884 NW2d 257 (2016). Following the hearing, the trial court awarded $16,380.73 to Warren and $4,446.80 to Seifman. [*Guzall v Warren*, unpublished per curiam opinion of the Court of Appeals, issued August 8, 2019 (Docket Nos. 344507 & 345190) (*Guzall I*), pp 5-6 (footnotes omitted).]

Guzall appealed to this Court, arguing that the trial court erred by determining that his present suit was an impermissible collateral attack on the trial court's order in the *Harris* litigation, and by holding him in contempt, entering a default against him, striking his pleadings, and releasing the escrowed funds. *Id*. at 6. This Court affirmed because it was "clear that Guzall [sought] in this action 'another bite at the apple' concerning his entitlement to the attorney fees at issue in the *Harris* litigation." *Id*. at 7; see also *id*. at 8. This Court also agreed that Guzall's claims in the present case were barred by collateral estoppel. *Id*. at 8-9. Additionally, this Court held that the trial court did not err in imposing sanctions against Guzall for filing a frivolous complaint. *Id*. at 9-10. The Michigan Supreme Court declined to grant leave to appeal. *Guzall v Seifman*, 505 Mich 1080 (2020).

Notably, defendants on appeal in *Guzall I* requested sanctions for plaintiffs' filing frivolous and vexatious appeals. *Id*. at 13. After receiving defendants' motion, this Court agreed that Guzall's appeal associated with Docket No. 344507 was frivolous and vexatious under MCR 7.216(C)(1)(a).[4] *Guzall*, unpub order. Consequently, this Court awarded "defendants their actual damages and expenses, including attorney fees, incurred as a result of plaintiffs' appeal in Docket No. 344507."[5] *Id*. This Court then remanded for the circuit court to (1) determine the amount of actual damages and expenses incurred by defendants related to the appeal in Docket No. 344507, and (2) enter an order awarding sanctions to defendants in those determined amounts.[6] *Id*. This

---

[4] MCR 7.216(C)(1) states, in pertinent part, that "[t]he Court of Appeals may, on its own initiative or on the motion of any party filed under MCR 7.211(C)(8), assess actual and punitive damages or take other disciplinary action when it determines that an appeal or any of the proceedings in an appeal was vexatious . . . ." See also MCR 7.216(C)(2) ("Damages may not exceed actual damages and expenses incurred by the opposing party . . . .").

[5] This Court stated that only the appeal in Docket No. 344507 was frivolous and vexatious, and not the appeal associated with Docket No. 345190, *Guzall*, unpub order, which dealt with the imposition of sanctions for filing a frivolous complaint, *Guzall I*, unpub op at 10.

[6] Under MCR 7.216(C)(2), this Court "may remand the case to the trial court or tribunal for a determination of actual damages."

Court's order also required defendants, within 30 days, to ask the circuit court to schedule a hearing and required the circuit court to make its determination within 90 days. *Id*.

## B. PROCEEDINGS ON REMAND

The trial court held a hearing regarding the amount of actual damages. It found that 26.25 hours was a reasonable amount of time for defendants to have spent while defending plaintiffs' frivolous and vexatious appeal in Docket No. 344507. The trial court also found that an hourly rate of $350 was reasonable under the circumstances. As a result, it awarded sanctions in the amount of $9,187.50 for attorney fees and $173.60 for costs, for a total of $9,361.10. This appeal followed.

## II. SCOPE OF APPEAL

As an initial matter, plaintiffs raise several issues challenging the validity of the orders and judgments in *Harris I* and *Harris II*. Plaintiffs also argue that errors were committed in the instant case, including by this Court in *Guzall I*. But these issues are not properly before us. Any issues with the decisions in *Harris I* and *Harris II* should have been raised in an appeal in those cases. The *Harris I* plaintiff's appeal was dismissed for lack of jurisdiction because that plaintiff was not an aggrieved party with standing to file an appeal. *Harris I*, unpub op at 1, 4. Then, in *Harris II*, this Court held that the trial court did not err by finding Guzall in contempt of court for his "childish behavior" by refusing to attend an evidentiary hearing when ordered to do so. *Harris II*, unpub op at 3-4. In *Harris II*, this Court also held that the trial court's striking of Guzall's filings and entering a default were proper sanctions. *Id*. at 4. Consequently, due to Guzall's contempt and default, this Court affirmed the attorney fees at the center of *Harris I* and *Harris II* awarded to Seifman. *Id*. Plaintiffs appealed the *Harris II* decision, but our Supreme Court declined to grant leave to appeal, *Harris v Greektown Superholdings, Inc.*, 503 Mich 871 (2018), which made the *Harris II* judgment final, see MCR 7.305(H)(3) ("If leave to appeal is denied after a decision of the Court of Appeals, the Court of Appeals decision becomes the final adjudication and may be enforced in accordance with its terms.").

Not only do plaintiffs seek to collaterally attack the decisions and judgments in *Harris I* and *Harris II*, they also seek to have us reverse this Court's prior decision in *Guzall I*. This is not permissible. First, the law of the case doctrine "holds that an appellate court's ruling on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *Cipriano v Cipriano*, 289 Mich App 361, 375; 808 NW2d 230 (2010). And second, and perhaps more directly, the scope of a second appeal is limited by the scope of the proceedings on remand. *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 703; 854 NW2d 509 (2014) (citation omitted) ("[W]hen an appellate court gives clear instructions in its remand order, it is improper for a lower court to exceed the scope of the order. It is the duty of the lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court."). In other words, "[i]ssues outside the scope of a remand order will not be considered on appeal following remand." *People v Burks*, 128 Mich App

255, 257; 339 NW2d 734 (1983).[7] The only issue before the trial court after this Court's remand in *Guzall I* was to determine the amount of actual costs, including attorney fees, that defendants incurred as a result of plaintiffs' frivolous and vexatious appeal in Docket No. 344507.[8] Because the validity of the judgments from *Harris I* and *Harris II* are not within the scope of this Court's remand order, plaintiffs cannot raise these issues in the present appeal.

Aside from being procedurally barred from raising these issues on appeal, one of the common threads in plaintiffs' arguments is that most of the "errors" occurred as a result of no court adhering to this Court's pronouncement in *Harris I* that Seifman lacked standing to intervene to seek the attorney fees in question. *Harris I*, unpub op at 2-3. But contrary to plaintiffs' view, this statement was nonbinding dictum and, even more so, void. In *Harris I*, this Court dismissed the appeal due to lack of jurisdiction. *Harris I*, unpub op at 1, 4. Thus, any pronouncement not related to why this Court dismissed the case is by definition dictum. See *Mount Pleasant Pub Sch v Lakeview Community Sch*, 302 Mich App 600, 610 n 2; 840 NW2d 750 (2013) (defining nonbinding dictum as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case") (quotation marks and citations omitted). Further, as plaintiffs recognize, it is well established that "[w]hen a court lacks subject matter jurisdiction to hear and determine a claim, any action it takes, other than to dismiss the action, is void." *Bowie v Arder*, 441 Mich 23, 56; 490 NW2d 568 (1992). Because this Court in *Harris I* dismissed the appeal on the narrow ground that it lacked jurisdiction due to the plaintiff Harris's lack of standing to appeal, its discussion related to whether Seifman (and by implication Guzall) could intervene, i.e., become a party, is void. Whether Seifman had standing at the trial court to seek attorney fees was not related to whether the plaintiff Harris had standing to bring an appeal. As such, because this Court dismissed *Harris I* for lack of jurisdiction, its "rulings" pertaining to the appropriateness of Seifman intervening in *Harris I* are ineffectual.

As a result, we decline to address plaintiffs' attacks on these prior judgments because they are barred by the law-of-the-case doctrine and impermissibly attempt to expand the scope of an appeal after a remand.

## III. ACTUAL DAMAGES

Plaintiffs argue that the trial court abused its discretion when it awarded defendants $9,361.10 in attorney fees and costs related to the frivolous and vexatious appeal in Docket No. 344507. We disagree.

---

[7] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted).

[8] This Court in its remand order explicitly stated, "Proceedings on remand are limited to the issue of defendants' damages and expenses in Docket No. 344507 only."

## A. STANDARD OF REVIEW

This Court reviews the award of attorney fees for an abuse of discretion. *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). "An error of law necessarily constitutes an abuse of discretion." *Denton v Dep't of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016). Any findings of fact on which the trial court based its award are reviewed for clear error. *Stallworth v Stallworth*, 275 Mich App 282, 288; 738 NW2d 264 (2007). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Zoran v Cottrellville Twp*, 322 Mich App 470, 475; 913 NW2d 359 (2017) (quotation marks and citation omitted).

## B. ANALYSIS

Plaintiffs first aver that the most that could have been awarded was $7,405 because that was the amount defendants originally claimed to have incurred (21.2 hours, plus costs), as evidenced by a motion filed in this Court at the time of the prior appeal. The latest invoice in that motion covered the period up to August 26, 2019. After this Court's remand, defendants requested to be reimbursed for a total of 32.25 hours, plus costs. In support of the extra 10.85 hours, defendants attached an additional invoice dated November 1, 2019. This November 1 invoice covered the period from August 29, 2019 through November 1, 2019, and listed 10.85 hours as having been incurred during this period. Thus, merely because the amount requested at the trial court was different from the amount requested at this Court is not a reason to find error; all of the billed time was supported with documentation. What matters is whether the amounts billed encompassed part of defendants' actual damages. And as discussed below, this is what the trial court sought to accomplish.

Plaintiffs next argue that the billing was inadequate because it did not specify which work was for Docket No. 344507. Although the billing itself did not reference which docket number was at issue for the various line items, the trial court, while examining each billing entry, was very aware that only items attributable to Docket No. 344507 were reimbursable. Accordingly, the fact that the billing document did not refer to a particular Docket No. is not controlling.

Plaintiffs also contend that defense counsel was double-reimbursed for the same work. In particular, plaintiffs allege that one invoice billed for 2.0 hours of time for August 23 and August 26, 2019, but another invoice billed for 1.25 hours for that same work, which this time occurred on October 4, 2019.[9] Plaintiff is mistaken. The invoiced work that occurred on August 23 and 26

---

[9] We note that plaintiffs did not raise this particular argument in the trial court. When the November 1, 2019 bill was being discussed, the only objection plaintiffs made was that the billing entries were not "parsed out" between the two Court of Appeals dockets. Nevertheless, we consider the issue preserved because the only issue on remand was the amount of attorney fees and costs the trial court should award in this case; defendant's argument on appeal is simply a more nuanced argument than what he raised at the trial court level. See *Mueller v Brannigan Bros*

related to filing a motion for damages in this Court, which was filed on August 26, 2019. In contrast, the work that occurred on October 4 was for a motion requesting a hearing on damages that was filed in the trial court on October 4, 2019. Thus, contrary to plaintiffs' assertion, there was no double billing.

Plaintiffs next argue that the trial court did not properly apply the factors from *Pirgu*, 499 Mich at 282. Our Supreme Court in *Pirgu* held that when determining the reasonableness of attorney fees, a court must first determine the reasonable hourly rate customarily charged in the locality for similar services. *Id*. at 281. The trial court then is to "multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." *Id*. Finally, the trial court must consider the following factors to determine if an up or down adjustment is appropriate:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Id*. at 281-282.]

The trial court went through all of the billing items and found that 26.25 hours of the requested 32.25 hours was a reasonable amount of time for defendants to have spent while defending against plaintiffs' frivolous appeal in Docket No. 344507. The trial court also found that defense counsel's hourly rate of $350 was reasonable given the circumstances and his experience. As a result, the trial court awarded sanctions in the amount of $9,187.50 for attorney fees and $173.60 for costs, for a total of $9,361.10. The trial court found no reason to adjust the calculated amount upward or downward.

---

*Restaurants & Taverns LLC*, 323 Mich App 566, 585-586; 918 NW2d 545 (2018) ("While minimal, appellate consideration is not precluded merely because a party makes a more developed or sophisticated argument on appeal. We prefer to resolve issues on their merits when possible, so we will construe plaintiff's objections in her favor to the extent we can.").

One of plaintiffs' complaints on appeal is that the trial court did not sufficiently account for *Pirgu* factor 2 because the amount of skill used in defending against the appeal was minimal, given that defense counsel mostly copied another attorney's work. Plaintiffs raised this argument in the trial court, which rejected it. The trial court stated that it thought more was involved than merely copying and pasting another's brief and that arguing before the Court of Appeals requires "a certain skill level" and "certain type of lawyering." The trial court did not abuse its discretion. Defense counsel admitted that he used codefendants' brief as a starting point in drafting his own brief, but he denied that he merely "cut and paste[d]" from codefendants' brief and instead explained that he reviewed the brief and conducted his own research to ensure that the facts and law were correct. These facts do not necessarily establish that a lower level of skill was needed, which undermines plaintiffs' argument.[10]

Plaintiffs further argue that a remand is necessary because the trial court failed to review the proofs. Plaintiffs' position is unfounded. At the hearing, the trial court went through each line item in the billing and, after entertaining any objections from plaintiffs, rendered a decision on those items. Plaintiffs' reliance on the trial court's comment that it was "not going to go through and slice that up" is misplaced. This comment referenced two entries for August 26 and August 28, 2018, in which defense counsel (1) billed 0.25 hours (15 minutes) for reviewing plaintiffs' claim of appeal and related documents and forwarding information to the client, and (2) billed 0.20 hours (12 minutes) for e-mails regarding briefing extension. At the hearing, plaintiffs contended that it would not take 15 minutes to review the claim of appeal and forward any communications. The trial court responded that the time claimed for both entries was reasonable and that it did not have to look at the e-mails themselves (or the claim of appeal) to make that determination. Given the small amount of time billed for these two items, we do not see how the trial court abused its discretion. Even if it was indeed a minimal amount of work, plaintiffs have failed to show how taking 15 minutes for each item falls outside the range of reasonableness.

Plaintiffs next suggest that it was improper for defense counsel to be reimbursed for attending oral argument in this Court when defense counsel knew that plaintiffs' counsel was not going to attend. This position is meritless. Merely because a party waives its right to oral argument does not then mean that it is pointless or unreasonable for other parties to appear. Plaintiffs, unsurprisingly, cite no authority for this proposition. Indeed, a party's right to oral argument is independent from any other party's right to attend. See <https://courts.michigan.gov/courts/coa/aboutthecourt/pages/faq.aspx> (accessed May 10, 2021) ("A party who timely files its brief on appeal and includes the statement 'ORAL ARGUMENT

---

[10] Likewise, plaintiffs' argument that defense counsel's "copying and pasting" does not support the $350 hourly rate is not persuasive. Regardless of the task counsel was doing, he was entitled to bill for his time. It was established that he had more than 30 years' experience, significant appellate experience, and regularly charged up to $400 per hour for his time. Thus, the trial court's decision to award defense counsel's actual hourly rate of $350 in this case was reasonable and not an abuse of discretion.

REQUESTED' on the title page of the brief in capital letters or boldface type is entitled to oral argument."),[11] citing MCR 7.212(C); MCR 7.214(A); IOP 7.214(A).

Plaintiffs further argue that no attorney fees should be recoverable for time spent after October 27, 2018, because those hours are related to defendants' *pursuit* of attorney fees. At the outset, plaintiffs do not explain the significance of this October 27 date. "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *Caldwell v Chapman*, 240 Mich App 124, 132-133; 610 NW2d 264 (2000). See also *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009) ("This Court will not search the record for factual support for a party's claim."). Indeed, that date seems to have no relevance to whether any activities were related to defending against plaintiffs' appeal in Docket No. 344507 because oral argument was not heard until August 6, 2019, and this Court issued *Guzall I* on August 8, 2019, both of which are well after the October 27, 2018 date. Moreover, plaintiffs failed to raise this issue at the trial court level. When the trial court discussed the billing entries for work taking place after October 27, 2018, plaintiffs never claimed that any of those fees were not recoverable as having been incurred in the pursuit of attorney fees. Indeed, when discussing the invoice that was issued on November 1, 2019, which addressed time spent after this Court issued its opinion in *Guzall I*, plaintiffs' only argument was that because Docket Nos. 344507 and 345190 had been consolidated, the trial court should split the time listed on that November 1, 2019 invoice between the two dockets. This was plaintiffs' position even though the work performed after the release of *Guzall I* related to the pursuit of attorney fees, which was solely connected to Docket No. 344507. Thus, because plaintiffs never raised the argument they raise on appeal at the trial court, it is not preserved, and we decline to address it. See *In re Murray*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 349068); slip op at 3-4; *Autodie, LLC v Grand Rapids*, 305 Mich App 423, 431; 852 NW2d 650 (2014).

Finally, plaintiffs argue that no costs should have been awarded without the attachment of "proof." Although defendants did not provide actual receipts with the attorney-billing statements, the invoices nonetheless noted these various expenses.[12] While the *weight* of this proof understandably is less than having and presenting actual receipts, it cannot be said that there was *no* proof to support the costs. Fundamentally, the trial court found that defendants had in fact incurred those expenses. With the invoices that were submitted, we are not left with a definite and firm conviction that the trial court made a mistake when it found that the various costs had indeed been incurred, and we decline to disturb those findings. See *Zoran*, 322 Mich App at 475.

---

[11] Specifically, this is addressed under Question 13 in the Frequently Asked Questions section.

[12] The $173.60 in expenses that the trial court awarded represented $45 for a messenger service, $5 for parking at the Court of Appeals, $103 for this Court's filing fee, and $20.60 for a circuit court filing fee.

## IV.  CONCLUSION

For the reasons stated in this opinion, we affirm the trial court's award of attorney fees and costs to defendants.  Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ James Robert Redford
/s/ Stephen L. Borrello
/s/ Jonathan Tukel