*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HOLLY CYNTHIA THOMAS,

        Plaintiff-Appellee,

v

BRADLEY EDWARD THOMAS,

        Defendant-Appellant.

UNPUBLISHED
February 22, 2024

No. 366112
Van Buren Circuit Court
LC No. 2020-070131-DM

Before: HOOD, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Defendant, Bradley Edward Thomas, appeals by right the judgment of divorce, order for spousal support, and order for child support entered after several days of a bench trial and numerous hearings. He also challenges the trial court's decision to dismiss his motion to change custody after the parties settled their custody dispute on the record. Defendant argues on appeal that the trial court should have granted his motion to change custody because he established proper cause or a change of circumstances to warrant an evaluation of the statutory best interest factors. He maintains that the trial court erred when it failed to impute a greater income to plaintiff, Holly Cynthia Thomas, which—in his view—affected the propriety of the child support and spousal support orders. He also argues that the trial court abused its discretion when it refused to give him credit for, or offsets against, his status quo payments during the pendency of the divorce. We agree that the trial court erred in several respects that warrant relief. Accordingly, for the reasons explained in this opinion, we affirm in part, vacate in part, and remand for further proceedings.

## I. BASIC FACTS

Plaintiff and defendant married in 2005, and the parties had four minor children together: JT, BT, UT, and ST.[1] Plaintiff was 46 years of age when the trial began, and defendant was 39 years of age. Defendant started his own excavating business shortly after the parties' marriage

---

[1] Plaintiff has three adult children from a previous relationship.

and operated it through a corporation and a limited-liability company. Plaintiff was a stay-at-home mother for most of the marriage.

Plaintiff sued for divorce in June 2020. She also filed ex parte motions for entry of a restraining order to prevent the dissipation of the marital estate and for exclusive use of the marital home. The trial court granted the motions and entered the ex parte orders. More specifically, in the order to maintain the status quo, the court ordered defendant to deposit $2,100 each month into plaintiff's joint bank account so that she could continue to pay the expenses that she had been paying using that account; it also gave plaintiff the exclusive use of the parties' Yukon Denali. The trial court later conducted a hearing because defendant objected to the status quo order. After hearing testimony, the trial court modified the order to require defendant to deposit $1,600 a month in the joint account. It otherwise affirmed the orders requiring defendant to maintain the status quo and providing that plaintiff had the exclusive use of the marital home and the Denali.[2]

The trial court conducted a bench trial over several days spanning from April 2021 through to April 2022, at which point the trial court gave its oral ruling settling the property disputes and determining defendant's income from his excavation business. Although the trial was complete, the parties continued to fight over various issues, and the court still had not entered a judgment, an order for spousal support, or an order for child support by November 2022. During that month, defendant also moved for a change in custody premised on proper cause or a change in circumstances. The trial court conducted a hearing in April 2023 to address the continued disputes over the proposed judgment of divorce. At that hearing, the trial court dismissed defendant's motion to change custody as premature and canceled all subsequently scheduled hearing dates. The court entered the judgment of divorce in April 2023 as well as uniform spousal and child support orders.

This appeal followed.

## II. MOTION TO CHANGE CUSTODY

Defendant argues that the trial court erred by sua sponte dismissing his motion for a change in custody without notice and without addressing the merits of the motion. We agree.

### A. STANDARDS OF REVIEW

Appellate review of the trial court's custody decision is limited: "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). This Court reviews a trial court's custody decision for an abuse of discretion. *Shulick v Richards*, 273 Mich App 320, 323; 729 NW2d 533 (2006). This Court will conclude that a trial court abused its discretion regarding a custody dispute only when

---

[2] We refer to the orders compelling defendant to make payments to maintain the status quo pending the divorce collectively as the status quo orders.

its "decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Geering v King*, 320 Mich App 182, 188; 906 NW2d 214 (2017) (quotation marks and citation omitted). A trial court commits a clear legal error when it "incorrectly chooses, interprets, or applies the law." *Dailey v Kloenhamer*, 291 Mich App 660, 664-665; 811 NW2d 501 (2011).

## B. ANALYSIS

MCL 722.27(1) provides, in relevant part:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:

> (a) Award the custody of the child to 1 or more of the parties involved . . . .

> * * *

> (c) Subject to subsection (3), modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age . . . . The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.

MCL 722.23 provides the factors that the trial court must consider when deciding what is in the best interests of the child.

The trial court's sua sponte dismissal of defendant's motion to change custody was based on its apparent belief that it could not hear such a motion until the prior custody order was incorporated into a final judgment. On February 1, 2022, while the bench trial was still ongoing, the trial court entered an order titled, "ORDER RESOLVING PENDING CUSTODY & PARENTING TIME TO BE INCORPORATED INTO JUDGMENT OF DIVORCE." The court, after outlining the custody arrangement, stated that "this Order shall be effective immediately as a temporary Order and shall be incorporated in the final Judgment of Divorce." This order was consistent with an agreement to which the parties stipulated. The following November, defendant filed a motion for a change in both legal and physical custody.

In February 2023, an evidentiary hearing regarding defendant's motion began, and the referee heard testimony from a reunification and coparenting therapist. However, at a hearing in April 2023, the circuit court sua sponte dismissed defendant's motion because

> there were no final orders in place. It's not—I mean at some point the parties make agreement or the Court makes orders and it goes into a judgment of divorce and it needs to get finalized. That's what we're doing today is we are finalizing everything, and as of today any of these motions that are pending, it looks like one

-3-

I can show is this motion to modify legal and physical custody. I'm going to grant [plaintiff's] motion that she filed on November 23rd to deny that motion.

The court then entered a judgment of divorce in which it incorporated the prior custody order without having ever conducted a complete evidentiary hearing nor making best interest findings.

Michigan caselaw has made it clear that a temporary custody order entered by stipulation of the parties without an evidentiary hearing or best interest findings is not a true custody order as anticipated by the Child Custody Act, MCL 722.21 *et seq*. Particularly instructive is *Thompson v Thompson*, 261 Mich App 353; 683 NW2d 250 (2004). In that case, "[the] trial court signed the parties' stipulation for 'temporary custody' " without conducting an "evidentiary hearing regarding the best interests factors." *Id*. at 358. When discussing whether the court needed to find proper cause or a change of circumstances to revisit custody at the trial, this Court stated that the trial court "had not awarded custody before the trial." *Id*. at 360.[3] "It is improper to decide the issue of custody on the pleadings alone when no evidentiary hearing is held" because "parties cannot conclusively agree regarding child custody." *Id*. at 359-360.

When *Thompson*'s holding is applied to this case, the trial court essentially entered into the judgment of divorce the stipulated temporary custody order, even though at the time of entry of the judgment proceedings were underway on defendant's contested motion to change custody. Moreover, it did so by dismissing defendant's motion, and without ever making findings regarding the best interests of the children. It is well established that "[a] trial court *must* consider the factors outlined in MCL 722.23 in determining a custody arrangement in the best interests of the children involved." *Bofysil v Bofysil*, 332 Mich App 232, 244; 956 NW2d 544 (2020) (emphasis added). The trial court's failure to make best interest findings when it was clearly apparent there was a continuing dispute over the proper custody for the children was a clear legal error. See *Dailey*, 291 Mich App at 664-665. Therefore, we must vacate the trial court's custody award and remand for a hearing regarding the best interests of the children.

### III. IMPUTED INCOME

Defendant argues that the trial court erred by not imputing enough income to plaintiff under the Michigan Child Support Formula (MCSF). We vacate the trial court's decision to impute income and order additional fact-finding.

### A. STANDARD OF REVIEW

---

[3] "Before modifying or amending a custody order, the circuit court must determine whether the moving party has demonstrated either proper cause or a change of circumstances to warrant reconsideration of the custody decision." *Dailey v Kloenhamer*, 291 Mich App 660, 665; 811 NW2d 501 (2011), citing MCL 722.27(1)(c). This finding was not necessary because the only order previously entered was a temporary one. *Thompson*, 261 Mich App at 357. Additionally, although we recognize (as did the trial court) that there was theoretically no final custody order to "change" at the time of entry of judgment, it was undisputed that a live custody dispute existed between the parties at the time the temporary order was entered into the judgment of divorce.

This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and the MCSF. See *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007). This Court reviews for an abuse of discretion a trial court's exercise of the discretion granted by the MCSF. *Id*. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. Finally, this Court reviews for clear error a trial court's findings in determining child support. *Id*. A finding is clearly erroneous when, after reviewing the entire record, this Court is left with the definite and firm conviction that the trial court erred. *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007).

## B. ANALYSIS

The trial court had to order child support by applying the MCSF unless it found that applying the formula would be unjust or inappropriate. See *Borowsky*, 273 Mich App at 673. The first step in applying the formula is to determine the parents' income. See 2021 MCSF 2.01. The formula defines "income" to include various forms of payments to the parent, but it generally includes wages from employers and regular payments to which the parent is legally entitled. See MCL 552.602(o); 2021 MCSF 2.01(A) to (M).

### 1. ACTUAL INCOME

Defendant raises various arguments regarding alleged errors that the trial court made when calculating plaintiff's actual income because it did not consider various sources of income that she had. Each of these arguments is without merit.

Defendant argues that the trial court should have considered the payments that it ordered him to make on behalf of plaintiff and the children while the case was ongoing. Those payments, however, were in effect spousal support and child support payments intended to maintain the status quo pending resolution of the divorce. Accordingly, the trial court did not err by declining to consider those payments because the formula specifically excludes them from income. See 2021 MCSF 2.01(F) (stating that spousal support is not income as between the parties); 2021 MCSF 2.03 (stating that a child's income should not be considered when calculating a support obligation); 2021 MCSF 2.07(A)(2) (stating that spousal support paid by the other spouse is not to be included in the recipient's income).

Defendant argues that the trial court should have considered the fact that plaintiff had a joint bank account with her mother and that it should have found that plaintiff had regular income in the form of gifts from her mother. Plaintiff testified that, even before the divorce, she frequently asked her mother for money to help with living expenses. She asserted that she had to do so because defendant did not provide sufficient funds to allow her to care for the children. She stated that she borrowed the money from her mother and testified that it was not regularly available to her. She informed the trial court that she had borrowed a little over $13,000 from her mother, which included tuition for her college courses. Plaintiff testified that she felt obligated to repay the money and that the joint bank account belonged to her mother. She explained that her mother used this account as an efficient way to transfer funds to plaintiff by depositing the funds when needed. Gifts can constitute income to a parent if the gifts "regularly reduce[] personal expenses," or "[r]eplaces or supplements employment income." 2021 MCSF 2.05(C). Plaintiff's testimony permitted an inference that she regularly borrowed money from her mother, but that the money

-5-

transfers were not gifts because she had the intent to repay them. The bank account was similarly just a tool to enable quick transfers of money deposited by her mother. Accordingly, the trial court did not clearly err to the extent that it credited plaintiff's testimony and found that these payments were not income to plaintiff. See *Stallworth*, 275 Mich App at 284.

Defendant argues that the trial court erred by failing to consider that plaintiff likely had income from family trusts. Plaintiff did testify about two family trusts. She stated that she was the beneficiary of a trust owned by her mother, but she was not entitled to any money from that trust until her mother died. For that reason, her mother's trust was not a source of income for her daily needs. Plaintiff also testified about a trust that her grandparents set up and for which she was the beneficiary. She stated that she used the proceeds from that trust on the marital home and that it no longer had any funds after she cashed it out. Plaintiff's mother testified that she was familiar with the trust set up by plaintiff's grandparents, and she agreed that that trust no longer had any funds. The evidence established that plaintiff did not have any income from her mother's trust because her mother had not yet died and that her grandparents' trust had been depleted. Accordingly, evidence showed that the trusts were not income for purposes of calculating child support. See 2021 MCSF 2.05(A) (stating that income does not include property from inheritances); 2021 MCSF 2.05(B) (stating that income does include interest earned on inherited property).

Defendant, therefore, has not shown that the trial court erred when it failed to find that plaintiff had income from these sources.

## 2. IMPUTED INCOME

Defendant argues that the trial court abused its discretion when imputing income to plaintiff by failing to follow the requirements for imputing income to a parent under the formula. Defendant also argues that the court erred by imputing less income to plaintiff than her actual earning ability.

"Generally, the Legislature has prescribed that courts shall follow the" child support formula as laid out in the MCSF Manual. *Burba v Burba*, 461 Mich 637, 644; 610 NW2d 873 (2000); see also *Peterson v Peterson*, 272 Mich App 511, 516; 727 NW2d 393 (2006). The MCSF gives trial courts the discretion to include potential income when calculating a parent's income if the court finds that the parent is "voluntarily unemployed or underemployed, or had an unexercised ability to earn." 2021 MCSF 2.01(G). See also *Berger v Berger*, 277 Mich App 700, 725; 747 NW2d 336 (2008). When applying the MCSF, courts should use the "relevant" factors to determine whether a parent has the "actual ability to earn and a reasonable likelihood of earning the potential income," and the potential factors include:

> (a) Prior employment experience and history, including earnings history, and reasons for any termination or changes in employment.

> (b) Educational level, literacy, and any special skills or training.

> (c) Physical and mental disabilities that may affect a parent's ability to work, or to obtain or maintain gainful employment.

(d) Availability for work (exclude periods when a parent could not work or seek work, e.g., hospitalization, incarceration, debilitating illness, etc.).

(e) Availability of opportunities to work in the local geographical area.

(f) The prevailing wage rates and number of hours of available work in the local geographical area.

(g) Diligence exercised in seeking appropriate employment.

(h) Evidence that the parent in question is able to earn the imputed income.

(i) Personal history, including present marital status, age, health, residence, means of support, criminal record, ability to drive, and access to transportation, etc.

(j) The presence of the parties' children in the parent's home and its impact on that parent's earnings.

(k) Whether there has been a significant reduction in income compared to the period that preceded the filing of the initial complaint or the motion for modification. [2021 MCSF 2.01(G)(2).]

"These factors generally ensure that adequate fact-finding supports the conclusion that the parent to whom income is imputed has an actual ability and likelihood of earning the imputed income." *Berger*, 277 Mich App at 725-726. The MCSF provides that a court does not comply with the requirements applicable to the imputation of income if it fails to "articulate information about how each factor in [2021 MCSF 2.01(G)(2)] applies to a parent having the actual ability and a reasonable likelihood of earning the imputed potential income, or failing to state that a specific factor does not apply." See 2021 MCSF 2.01(G)(4)(c).

In this case, the trial court determined that it would impute income to plaintiff in passing as part of its decision on the property award. It explained:

Earnings abilities of the parties. Plaintiff is 46 years old and in good health. She has some college education, is hoping to complete an associate's degree in the summer of 2022. Plaintiff has not been recently employed. She is employable and it is reasonable to conclude that her ability to earn income is very good. And, her earning potential should greatly improve when she concludes her education and has further work experience. The Court is going to determine that we need to impute income on the plaintiff. Plaintiff has not worked for quite a few years, has been a stay at home mother. The children are back in school and are going to school full time and while it's clear that there may be some other issues that need to be dealt with such as day care and other matters that can at times be calculated into child support calculations, the Court is going to impute income on . . . at a minimal. We understand minimum wage is less than $10 an hour but the Court is going to impute $10 an hour for 40 hours a week for an income of $20,800 per year or $1,733 per month.

The trial court seems to have only considered plaintiff's education, her recent employment history, and the presence of the children in the home. The record suggests that the trial court did not consider the majority of the factors required. The court clearly did not go through each factor listed by 2021 MCSF 2.01(G)(2) and did not articulate how that factor applied or state that the factor did not apply, as required by 2021 MCSF 2.01(G)(4)(c). In her brief on appeal, plaintiff addresses each factor and cites trial testimony that would have supported a finding in favor of the trial court's decision for each factor. The problem, however, is not that there was no evidence to support specific findings regarding each of the factors required to impute income under the MCSF. The trial court did not comply with the requirements to analyze each factor or state that the factor did not apply, and the trial court could not impute income to plaintiff without complying with the requirements of the MCSF. Accordingly, the trial court erred as a matter of law when it elected to exercise its discretion without complying with the requirements of the MCSF. See *Elher*, 499 Mich at 21.

Accordingly, we vacate the trial court's decision to impute income to plaintiff. On remand, the trial court shall determine whether to impute income to plaintiff and how much income to impute by using the factors provided in 2021 MCSF 2.01(G)(2).

## IV. SPOUSAL SUPPORT

Defendant's argument that the trial court erred by ordering spousal support is without merit; however, we vacate the support award and remand this case for recalculation of the amount of spousal support.

## A. STANDARDS OF REVIEW

This Court reviews a trial court's decision concerning whether to award spousal support for an abuse of discretion. See *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. at 26. This Court reviews for clear error the findings underlying the trial court's decision on spousal support. *Id*. A finding is clearly erroneous when this Court is left with a definite and firm conviction that the trial court was mistaken. *Id*.

## B. ANALYSIS

The Legislature has granted trial courts the discretion to order one spouse to pay spousal support to the other when "the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party." MCL 552.23(1). The purpose of an award of spousal support is to "balance the incomes and needs of the parties so that neither will be impoverished." *Loutts*, 298 Mich App at 26. When determining whether to order spousal support, Michigan courts must use a case-by-case approach that examines all the facts and circumstances surrounding the case; there is no strict formula. *Id*. at 29-31.

Michigan courts examine all the relevant factors, which include:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Id*. at 31-32 (quotation marks and citations omitted).]

The trial court should make specific findings for each of the factors that are relevant to the particular case. *Id*. at 32. This Court will affirm an award of spousal support unless it is "firmly convinced that it was inequitable." *Andrusz v Andrusz*, 320 Mich App 445, 452; 904 NW2d 636 (2017) (quotation marks and citation omitted). In this case, the trial court specifically addressed the factors applicable to an award of spousal support, and defendant challenges some of its findings.

First, defendant argues that the court's findings regarding his income and the outlook of his excavation business were without evidentiary support. The Court found that defendant "will have a continuous source of income from the business for many years." Although there was record evidence that defendant's excavation business had some difficulties in recent years, the record showed that he had consistently generated enough revenue from the business to both meet the business's needs and to draw an adequate salary. The record showed that defendant's income from the business had been the sole regular support for the family throughout the marriage, and it was undisputed that defendant met the payment obligations ordered by the court in the status quo orders during the pendency of the divorce. Indeed, defendant testified that—notwithstanding the loss of prequalification status—he had continued to obtain road jobs, he was working on one at the time of trial, and he would be starting another a week later. The record showed that defendant's excavation business suffered in part because of the problems associated with the divorce. He also lost the ability to bid on state projects and projects in Allegan County due to losses on his more recent financial statements. Notwithstanding these concerns, defendant testified that the negative year was a "weird year," and he was hopeful that he could turn things "back around." The evidence supported an inference that defendant would be able to maintain the business and generate a stream of income that was at least comparable to the income that he derived during the pendency of the divorce.

Second, defendant argues that the trial court did not adequately consider the property award to plaintiff that was—in his view—sufficient for plaintiff's financial maintenance. The trial court awarded plaintiff an approximately equal share of the estate, but the vast majority of the value was associated with two parcels of real estate. None of the property awarded to plaintiff could be expected to generate revenue. Defendant's award, by contrast, included the businesses, which had generated, and continued to generate, a substantial stream of income. Plaintiff's property would only generate revenue if it were sold. Plaintiff could not reasonably be expected to sell the home in which she lived; a spouse normally should not be required to invade his or her property for his

or her own support. See *Olson v Olson*, 256 Mich App 619, 632-634; 671 NW2d 64 (2003). This argument is without merit.

Finally, defendant argues that, due to equitable considerations, the trial court's decision was not "just and reasonable" as required by MCL 552.23(1). According to defendant, the court did not consider the status quo payments defendant made to plaintiff during the pendency of the divorce, wrongfully blamed and punished defendant for the breakdown in the marriage, and failed to consider that plaintiff was voluntarily unemployed. By its terms, MCL 552.23(1) is prospective looking—it authorizes a trial court to award spousal support when the court finds that the estate awarded to one spouse is insufficient for his or her needs after the divorce. Moreover, as this Court has explained, the goal of an award of spousal support is to ensure that neither spouse is impoverished by the divorce. See *Loutts*, 298 Mich App at 32. Thus, the payments made to maintain the status quo during the pendency of the proceeding were not probative of plaintiff's needs moving forward. Moreover, defendant's argument that he was being punished for causing the breakdown in the marriage is unsupported by the record. Finally, contrary to defendant's contention on appeal, the trial court did not examine the equities through a "unidimensional lens" that allowed plaintiff to remain voluntarily unemployed. The trial court actually imputed income to plaintiff on finding that she was voluntarily unemployed. The trial court, however, recognized that plaintiff had not yet completed her education and still had a home to maintain and children for which she had to care. The court examined plaintiff's budget and found that she had a shortfall, which impliedly amounted to a finding that she would be impoverished, even assuming that she returned to work.

Although the trial court did not abuse its discretion when it determined that an award of spousal support would be appropriate, it premised its exercise of discretion on the imputation of income that was determined without fully complying with the requirements of the MCSF, which, as already noted, must be reexamined on remand. Indeed, the court expressly incorporated its decision to impute an income of $10 per hour for 40 hours a week into its decision regarding spousal support. Because the recalculation of plaintiff's earning potential might affect the trial court's determination concerning the amount and length of any award of spousal support, we affirm the trial court's decision to award spousal support but vacate the amount. On remand, the court shall revisit this issue in light of its decision on remand regarding imputation of income.

## V. DOUBLE-DIPPING

Defendant argues that the trial court engaged in impermissible "double dipping" by failing to account for the status quo payments when entering child and spousal support awards. We disagree.

The sole authority upon which defendant relies for this argument is *Loutts v Loutts*, which lays out the law governing this concept of "double dipping" in divorce proceedings. In *Loutts*, the plaintiff earned a $240,000 yearly salary from a business that he had formed, but the trial court imputed an income of only $130,000 because it "awarded defendant one-half the value of [the business] when it divided the parties' marital assets." *Loutts*, 298 Mich App at 26. The trial court reasoned that it would be impermissible "double dipping" if it awarded half of the business's value to the defendant then also considered the business when calculating spousal support. *Id*. This Court determined that the trial court erred:

[A] trial court's decision to award spousal support is discretionary and should reflect what is just and reasonable under the circumstances of the case. Parties to a divorce action are entitled to individual consideration based on the law and facts applicable to their case. Spousal support does not follow a strict formula. Indeed, given the statutory mandate of MCL 552.23 there is no room for the application of any rigid and arbitrary formulas when determining the appropriate amount of spousal support." Accordingly, we decline to adopt a bright-line rule with respect to "excess" income and hold that courts must employ a case-by-case approach when determining whether "double-dipping" will achieve an outcome that is just and reasonable . . . . [*Id.* at 30 (quotation marks, citations, and alterations omitted).]

While defendant's arguments with respect to this issue are not clear, it is clear that *Loutts* does not help him. First and foremost, in *Loutts*, this Court held that double-dipping was a permissible exercise of a court's discretion. Second, defendant is not describing the scenario present in *Loutts*. Defendant does not argue that the court erred by considering the salary he earned from his business; rather, he argues that the court erred by failing, in his view, to consider the fact that plaintiff had been receiving ongoing status quo payments. *Loutts* in no way supports this argument, and this argument has been raised and rejected with respect to other issues in this appeal. Defendant does suggest that the "double-dipping" occurred because of assets that plaintiff received through the property award, but this argument was addressed with respect to defendant's spousal support arguments.

In conclusion, defendant has failed to establish any basis for relief with respect to any alleged "double dipping" of assets.

## VI. MCSF DEVIATION

Defendant argues that the trial court abused its discretion when it refused to deviate from the MCSF and ordered him to pay back child support because of the ongoing status quo payments he made through the pendency of the divorce. We agree.

## A. STANDARD OF REVIEW

This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and the MCSF. See *Borowsky*, 273 Mich App at 672. This Court reviews for an abuse of discretion a trial court's exercise of the discretion granted by the MCSF. *Id.* A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id.* Finally, this Court reviews for clear error a trial court's findings in determining child support. *Id.* A finding is clearly erroneous when, after reviewing the entire record, this Court is left with the definite and firm conviction that a mistake was made. See *Stallworth*, 275 Mich App at 284.

## B. ANALYSIS

The trial court had an obligation to calculate child support in conformity with the MCSF. See MCL 552.605(2). Nevertheless, the trial court had the discretion to "enter an order that

-11-

deviates from the formula if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate." MCL 552.605(2).

> The court may enter an order that deviates from the formula if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record all of the following:
>
> > (a) The child support amount determined by application of the child support formula.
> >
> > (b) How the child support order deviates from the child support formula.
> >
> > (c) The value of property or other support awarded instead of the payment of child support, if applicable.
> >
> > (d) The reasons why application of the child support formula would be unjust or inappropriate in the case. [MCL 552.605(2).]

The formula provides additional guidance for deviations. It states that the court should follow the formula even when it deviates "except for the provisions that create an unjust result." 2021 MCSF 1.04(B). The formula also identifies situations that can cause the strict application of the formula to be unjust or inappropriate. See 2021 MCSF 1.04(E). One of those situations involves cases wherein the trial court has ordered "a parent to pay taxes, mortgage installments, home insurance premiums, telephone or utility bills, etc., before entry of a final judgment or order." 2021 MCSF 1.04(E)(12).

In June 2020, the trial court entered an ex parte order requiring defendant to deposit $2,100 for plaintiff's use into the parties' joint bank account in order to maintain the status quo during the pendency of the divorce. The court also gave plaintiff the exclusive use of the family's Denali and the marital home. The trial court conducted a hearing in August 2020 to determine the continued propriety of that order after defendant objected to it. The trial court heard testimony at that hearing about the manner in which the parties had historically maintained their household and learned that defendant had paid all the household expenses except certain expenses involving the children and household. For those expenses, although plaintiff believed it was not enough, it was defendant's practice to give plaintiff $1,600 a month so that plaintiff could pay those expenses. Plaintiff testified that the $1,600 a month was to "pay the bills or buy the kids their needs like clothing, shoes, etcetera, toys, birthday presents. Basically it goes right back into the house and right to the kids." After hearing the testimony, the trial court modified the earlier restraining order to require defendant to deposit $1,600 a month into a joint bank account for plaintiff's use. It also gave plaintiff the exclusive use of the marital home and the family's Denali. The trial court later held defendant in contempt for using a portion of the $1,600 that he deposited into the joint bank account for payments on the Denali and ordered him to reimburse plaintiff for the $3,841.95 shortfall caused by that practice. The trial court's order of contempt made it clear that defendant was responsible for paying the expenses associated with the Denali out of his personal income other than the funds that he deposited, which were for plaintiff's exclusive benefit to meet the expenses associated with maintaining her household and supporting the children when in her care.

In response to defendant's arguments, plaintiff argues that the payments required by the status quo orders were not spousal support and not child support because the trial court never applied that label to the payments. For that reason, she maintains that it would not be proper to give defendant any credit for those payments against his child support and spousal support obligations. This argument is not persuasive. The effect of these orders was to compel defendant to cover all of the family's expenses that he had historically covered during the pendency of the divorce in the same manner that he had before the parties' separation even though he no longer had the use of the family home. This was in addition to his obligation to pay all of the expenses for his children during his parenting times. Therefore, the trial court's order essentially required defendant to cover all the living expenses of the children and plaintiff throughout the pendency of the divorce. By any other label, such payments would be deemed spousal support or child support, or some combination. Defendant should not be penalized for complying with the trial court's orders and making payments that kept plaintiff and the children from being impoverished during the pendency of the divorce.

In any event, the label given the payments is not dispositive. The MCSF allows a deviation from the strict application of the support calculations when the trial court has ordered one spouse to make payments that reduced his or her income available for child support, see 2021 MCSF 1.04(E)(12), and that provision clearly applied to the facts of this case without regard to whether the payments were characterized as status quo payments. Defendant made thousands of dollars of payments to support plaintiff and the children during the pendency of the divorce. Despite these payments, the trial court calculated defendant's child support obligation for the same period as though he had not made any payments. It essentially treated defendant as though he had completely failed to support his children during that time frame and had all the income from that period available to pay support. The court also did not adjust plaintiff's income to reflect that she had the benefit of these payments. Instead, the trial court imputed an income to plaintiff that was less than the benefit that she received in payments that defendant made on her behalf and on behalf of the children.

When it denied defendant's request for credit or an offset, the trial court explained that the case had been pending for a long time through the fault of both parties and that it was difficult to determine defendant's actual income. It also reasoned that defendant would likely make a lot more income in the future. These reasons are not well-taken. The fact that defendant had to make the payments for an inordinately long period did not militate against a deviation—rather, it strongly suggested that it would be unjust or inappropriate for the court to not make some provision for the required payments given how long he had made them. There was also no evidence that defendant would be making substantially more income in the future, and even if he were to have an increase, that increase would justify a future recalculation of his support obligation—it would not justify a past unjust or inappropriate child support order.

For these reasons, we vacate the order for child support and remand for recalculation of the child support applicable to the period for which defendant was required to make the various status quo payments.

## VII. CONCLUSION

The trial court's order dismissing defendant's motion to change custody is vacated. The trial court's calculation of plaintiff's actual income is affirmed, but the amount of additional income it imputed to plaintiff is vacated. The trial court's decision to order spousal support is affirmed, but the amount of spousal support is vacated. The trial court's child support order is also vacated. This case is remanded for additional proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having entirely prevailed, no costs may be taxed. MCR 7.219(A).

/s/ Noah P. Hood
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado