STALLWORTH v STALLWORTH

Docket No. 266202. Submitted March 6, 2007, at Detroit. Decided April 17, 2007, at 9:10 a.m.

Katrina Stallworth was granted a judgment of divorce from Keith Stallworth in the Oakland Circuit Court, Family Division, Martha D. Anderson, J. The defendant appealed, alleging that the trial court erred with regard to the amount of child and spousal support he was ordered to pay, as well as in awarding attorney fees to the plaintiff.

The Court of Appeals *held*:

1. The trial court reasonably deduced from the evidence that the defendant did not report all his income to the court.

2. The trial court improperly relied on the fact that the defendant has a reduced income capacity as a result of a criminal conviction in imputing income to the defendant.

3. The trial court mistakenly used the plaintiff's pay stub as evidence of her net income because the plaintiff's undisputed testimony indicated that her actual net income was higher.

4. The trial court did not clearly err in awarding the plaintiff attorney fees. The evidence showed the plaintiff's inability to pay her attorney fees and the defendant's ability to contribute towards the plaintiff's attorney fees.

5. The awards for child and spousal support must be vacated and the matter must be remanded to the trial court for the purpose of recalculating the parties' incomes and the defendant's child and spousal support obligations if the trial court again concludes that the plaintiff is entitled to such support.

Vacated in part, affirmed in part, and remanded for further proceedings.

1. DIVORCE — CHILD SUPPORT — IMPUTED INCOMES.

A court determining child support in a divorce action may impute income to a parent on the basis of the parent's unexercised ability to pay when supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income; factors that a court must consider in imputing income include

employment experience, educational level, physical and mental disabilities, whether the parties' children reside in the individual's home, the availability of employment, the wage rates, special skill and training, and whether the person can actually earn the imputed income.

2. DIVORCE — CHILD SUPPORT — IMPUTED INCOMES.

A trial court determining child support in a divorce action may not impute income to a party on the basis of the party's reduced income capacity resulting from the party's past criminal activities where, although the criminal actions were voluntary, there is no evidence that the crimes were committed with the intent to reduce the party's income.

*Law Offices of Sullivan and Leavitt, P.C.* (by *Michael J. Leavitt* and *Derk A. Wilcox*), for the defendant.

Before: MARKEY, P.J., and MURPHY and KELLY, JJ.

MARKEY, P.J. Defendant appeals by right a divorce judgment entered on September 15, 2004. He contests the amount of the award of child and spousal support, as well as the awarding of attorney fees to plaintiff. We vacate in part, affirm in part, and remand for further proceedings.

Defendant argues that the trial court improperly imputed income to him. In fact, the trial court not only imputed income to defendant but also found that defendant had financial resources unaccounted for in his yearly income statements, so the court considered those financial resources when computing defendant's net income.

The Michigan Legislature has required that when a court orders child support as part of a divorce judgment, "the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau" unless to do so would be "unjust or inappropriate" and

the trial court makes certain specified findings "in writing or on the record . . . ." MCL 552.605(2); *Peterson v Peterson*, 272 Mich App 511, 516-517; 727 NW2d 393 (2006). Thus, a trial court must presumptively follow the Michigan Child Support Formula (MCSF). If the court deviates, it must make an adequate record regarding the mandatory statutory criteria for doing so. *Burba v Burba (After Remand)*, 461 Mich 637, 644-646; 610 NW2d 873 (2000). We review de novo whether a trial court properly reached its determination within the framework of the MCSF or the statutory deviation criteria. *Id.* at 647; *Peterson, supra* at 516. We review for clear error, however, the trial court's factual findings underlying its determination of a child-support award. MCR 2.613(C); *Beason v Beason*, 435 Mich 791, 804-805; 460 NW2d 207 (1990). A finding is clearly erroneous if this Court, on all the evidence, is left with a definite and firm conviction that a mistake was made; the appellant bears the burden of showing that a mistake was made. *Id.* We review for an abuse of discretion a trial court's discretionary rulings that are permitted by statute or the MCSF. *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007). "An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Id.*, citing *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

According to the 2004 Michigan Child Support Formula Manual, the first step in determining a child-support award is to ascertain each parent's net income by considering all sources of income. 2004 MCSF 2. In general, this is determined by ascertaining "the actual resources of each parent." MCL 552.519(3)(a)(vi); *Ghidotti v Barber*, 459 Mich 189, 198; 586 NW2d 883 (1998). But longstanding Michigan caselaw permits a court to impute income to a parent on the basis of the

parent's unexercised ability to pay when supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income. *Id.* at 198-199. Consistent with this caselaw, the MCSF grants a court the discretion to impute income to a parent, 2004 MCSF 2.10(B), which the manual defines as "treating a party as having income or resources that the individual does not actually have." 2004 MCSF 2.10(A). "This usually occurs in cases where there is a voluntarily [sic] reduction of income or a voluntary unexercised ability to earn." *Id.*

In this case, the trial court accepted testimony from plaintiff and plaintiff's witnesses that defendant earned or had access to monies other than his reported $2,500 a month consulting fee. This was a factual determination that defendant's *actual* income was higher than what defendant reported to the court. The trial court also imputed income to defendant on the basis of his prior employment,[1] education, and physical and mental abilities. The trial court recognized that defendant's criminal conviction adversely affected defendant's income, but discounted this factor because the lowered income was the result of defendant's own actions. The crux of our difficulty in reviewing the trial court's ruling is that it did not specify how much higher it found defendant's actual income to be than what defendant claimed, or how much income it was imputing to defendant.[2]

---

[1] Defendant's career as an elected officeholder ended after a criminal conviction, but he continued to be self-employed in a number of business endeavors.

[2] We recognize that in the case of a self-employed businessman such as defendant, a fine line may exist between these two categories. The MCSF also recognizes the special difficulties inherent in ascertaining the actual income of self-employed persons "because persons who have significant control over the form and manner of their own compensation may be able

In regard to the trial court's finding that defendant earned more than he reported, plaintiff presented testimony that defendant kept large amounts of cash at his residence and that he received checks on demand from a corporation that he formerly owned. In addition, defendant's lifestyle indicated an income far greater than the one he claimed he earned. Defendant lived in a luxury apartment and, in general, maintained the lifestyle that the parties enjoyed while they were married. Defendant's monthly expenses greatly exceeded his purported monthly income. Also, defendant testified that he still owned six corporations. The trial court reasonably deduced that defendant derives additional income that he did not report. Accordingly, we find that the trial court did not commit clear error by finding that defendant's net monthly income exceeds $2,500 a month. The trial court was in the best position to evaluate the credibility of the witnesses, and we will not second-guess the trial court's determination that defendant presented a less than credible accounting of his finances. See *Draggoo v Draggoo,* 223 Mich App 415, 429; 566 NW2d 642 (1997).

Still, we determine that the trial court used an improper factor when imputing income to defendant. When deciding whether to impute income to an individual, a trial court must consider the following factors: employment experience, educational level, physical and mental disabilities, whether the parties' children reside in the individual's home, availability of employment, wage rates, special skills and training, and whether the individual can actually earn the imputed income. 2004 MCSF 2.10(E); *Ghidotti, supra* at 199. A trial court has the discretion to impute income when a parent volun-

---

to arrange that compensation so as to be able to minimize the amount visible to friends of the court and others." 2004 MCSF 2.11(A).

tarily reduces or eliminates income or when it finds that the parent has a voluntarily unexercised ability to earn. 2004 MCSF 2.10(A) and (B); *Olson v Olson*, 189 Mich App 620, 622; 473 NW2d 772 (1991).

Here, the trial court improperly relied on defendant's reduced income capacity that resulted from his past criminal activities to impute income to him. The court opined that it "[was] not inclined to reward Defendant for his actions by lowering his financial obligations to support his family." Although it is true that defendant's criminal actions were voluntary, there is no evidence that defendant committed any crimes with the intent to reduce his income. Indeed, given the nature of the crimes, it could be inferred that defendant was attempting to *increase* his income. Defendant's criminal conviction bars him from earning a living in politics, at least now, because he was forced to resign from his most recent elected position. Defendant's resignation resulted in an involuntary reduction in his income. Although it is true that defendant obviously knew he was committing crimes and did so voluntarily, he has been punished for those crimes. To now cite his criminal conviction as a voluntary lowering of his income in an effort to thwart child and spousal support is both illogical and legally unprecedented. We cannot do so, and must conclude that it was improper for the trial court to have done so. Therefore, we hold that the trial court improperly used defendant's conviction as a reason for imputing income to him.

Defendant next argues that the trial court incorrectly calculated plaintiff's income and thereby erroneously reduced her annual income by 22 percent. We agree.

Again, we review a trial court's factual findings for clear error. *Beason, supra* at 804-805. Plaintiff introduced her most recent pay stub as evidence of her net

income. The pay stub reflected bi-weekly earnings of $376. On cross-examination, however, plaintiff admitted that she usually made $440, plus tips, every two weeks for a total of approximately $480. On this record, the trial court mistakenly used the $376 figure to compute plaintiff's income when it was undisputed that plaintiff actually earned $480 bi-weekly.

Defendant also argues that the trial court erred by computing his child and spousal support obligations on the basis of the income imputed to him. Considering that the trial court erred in its calculation of the parties' incomes, we vacate the support awards and remand this matter to the court for the purposes of recalculating the parties' incomes and defendant's child and spousal support obligations should the court again conclude that plaintiff is entitled to such support. *McLain v McLain*, 108 Mich App 166, 168; 310 NW2d 316 (1981).

Finally, defendant argues that the trial court improperly awarded plaintiff attorney fees. This Court reviews a trial court's grant of attorney fees for an abuse of discretion. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error; questions of law are reviewed de novo. *Id.*

Necessary and reasonable attorney fees may be awarded to enable a party to carry on or defend a divorce action. *Maake v Maake*, 200 Mich App 184, 189; 503 NW2d 664 (1993). In the present case, the trial court decided that awarding plaintiff attorney fees was necessary to enable her to obtain a divorce. The parties stipulated that each attorney was owed $18,500. Plaintiff was awarded $10,000 in attorney fees. Because plaintiff's yearly income is less than the amount she owed her attorney, she sufficiently demonstrated her inability to pay her attorney fees. Furthermore, defen-

dant earns more than double what plaintiff earns in a year, which demonstrated his ability to contribute to plaintiff's attorney fees. Under these circumstances, the trial court's ruling was within the range of reasonable and principled outcomes. *Borowsky, supra.*

We vacate in part, affirm in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.