*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CAREY CHRISTINE SCHEARER,

        Plaintiff/Counterdefendant-Appellee,

v

ROBERT DEAN SCHEARER,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
May 12, 2022

No. 357690
Midland Circuit Court
Family Division
LC No. 19-006746-DO

Before: LETICA, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's June 10, 2021 judgment of divorce in which the parties' house was deemed marital property and defendant's request for spousal support was denied. We affirm.

## I. BACKGROUND

The parties were married on December 28, 2007, and they separated on December 5, 2019. Plaintiff filed for divorce on December 30, 2019. The parties did not have any children together, but plaintiff had two adult children from a prior relationship. A contested divorce trial was conducted on November 13, 2020. Two of the main issues to be resolved at the trial included division of property—specifically, the marital home—and spousal support.

Defendant argued that the marital home should be deemed his separate property. The parties came into possession of the home as part of the distribution of defendant's father's trust following his death. The trust provided that the home be given to defendant and made no mention of plaintiff; however, the quitclaim deeds conveying the house and a plot of farmland named both plaintiff and defendant as the recipients. The parties moved into the home before defendant's father passed away in January 2009 and lived in the home for 11 years, up until the point of separation. The farmland was subsequently sold in August 2009 for $33,000, and the parties used that money to complete improvements on the home. Plaintiff testified as to the following renovations on the home:

> We turned the one-car garage into two bedrooms. We turned the breezeway into a kitchen and a laundry room. The old kitchen—everything was kitchen, laundry room, dining room in one room and we—that got turned into a dining room. We repainted everything and re-carpeted. We remodeled the bathroom. We put a new roof on. We added a septic tank and a new drain field. We poured concrete, a concrete slab in front of the existing outbuilding. What else did we do? We bought all new appliances.

Plaintiff testified that she paid for a new septic system in February 2009 and a new roof in July 2009, and invoices for both corresponded to plaintiff's testimony. Renovations to the bedrooms, kitchen, and laundry room were paid for by defendant's father, according to plaintiff. Plaintiff further testified that her money consistently went to the improvement and maintenance of the home. Defendant, in contrast, testified that his father paid for all of the improvements that were made in the home. Plaintiff testified that in either 2015 or 2016 they made improvements to the electrical system in the pole barn that enabled them to grow marijuana. Plaintiff stated that this improvement was mostly paid for with defendant's back pay from his Social Security, and that the rest of the money for the project came from a credit card and a $5,000 bank loan.

The other major point of contention at the trial was the issue of spousal support, to which defendant argued he was entitled because plaintiff supported him through almost the entirety of the marriage and he would be left destitute without such support. During the marriage, plaintiff was the primary breadwinner, working 40 hours a week for $12 an hour. Plaintiff made additional income by growing marijuana in the parties' pole barn. After the parties separated, plaintiff's wage increased to $16 an hour, but she did not continue her marijuana operation. Defendant had not been employed since 2011, but he received $870 a month from Social Security disability benefits. Defendant testified that this was his only source of income, but he also had been making unexplained cash deposits into the parties' joint bank account that totaled approximately $2,000 a month. The parties also had numerous debts that were owed to several sources and plaintiff was financially responsible for her adult son who had just graduated from high school and was unemployed.

The court determined that the house was marital property and that defendant was not entitled to spousal support. This appeal followed.

## II. MARITAL HOME

Defendant argues that the trial court's finding that the house was marital property was clear error. We disagree.

"This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). "A finding is clearly erroneous if, after reviewing the entire record, [this Court is] left with the definite and firm conviction that a mistake was made." *Loutts v Loutts,* 298 Mich App 21, 26; 826 NW2d 152 (2012).

-2-

Prior to dividing assets, the trial court must determine what is marital property and what is separate property. *Cunningham v Cunningham*, 289 Mich App 195, 200-201; 795 NW2d 826 (2010). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Id*. at 201, citing MCL 552.19. "[W]hen the marital estate is divided each party takes away from the marriage that party's own separate estate with no invasion by the other party." *Id*. (quotation marks and citation omitted). The marital property is then apportioned "between the parties in a manner that is equitable in light of all the circumstances." *Id*. While property acquired during the marriage is generally marital property, "an inheritance received by one spouse during the marriage and kept separate from marital property is separate property." *Id*.

The trust itself provided that the house be distributed to defendant, and it made no mention of plaintiff; however, the quitclaim deed that transferred ownership of the house named both plaintiff and defendant. Defendant argues that, because the trust named only him as the beneficiary with respect to the house, it was his separate property. Plaintiff, on the other hand, argues that because she was named in the deed and defendant never challenged the distribution of the trust's assets in the probate court, the house was marital property. The probate court has "exclusive legal and equitable jurisdiction" over proceedings concerning the distribution of a trust. MCL 700.1302(b). Because the probate court had exclusive jurisdiction, the circuit court had no jurisdictional basis upon which to set aside the trustee's distribution of the marital home. Therefore, the trial court was bound by the terms of the quitclaim deed and correctly concluded that the house was marital property.

Even if the house was inherited and deeded exclusively to defendant, the trial court's finding that the home became marital property over the course of the marriage was not clear error. The trial court found:

> while Defendant inherited the property through a trust, it was titled in joint names, treated as marital property and Plaintiff expended her funds and energies to its improvement. Separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and "treated by the parties as marital property." [*Wilson v Wilson*, 179 Mich App 519 (1989).] The Court finds that the marital home is marital property subject to division.

"The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital." *Id*. at 201-202 "The actions and course of conduct taken by the parties are the clearest indicia of whether property is treated or considered as marital, rather than separate, property." *Id*. at 209. In this case, the marital home was treated as marital property. Plaintiff lived in the home with defendant beginning in 2009 until the parties separated in 2019. Moreover, significant remodeling was done on the house, and this appeared to have been a joint effort. The parties also made substantial electrical improvements to the property's pole barn so that plaintiff could operate a business growing marijuana. While the remodeling was paid for by defendant's father, defendant's Social Security backpay, and the proceeds from the sale of the farmland, plaintiff also contributed through her own income, credit cards, and by taking out a $5,000 loan. Given these facts and the deferential clear-error standard of review applicable to this case, we are not definitely and firmly convinced that the trial court

made a mistake by finding that the marital home was treated as and considered marital property and therefore subject to division by the parties.

## III. SPOUSAL SUPPORT

Defendant argues that the trial court's declination to award spousal support was an abuse of discretion. We disagree.

Whether to award spousal support or impute income is within the discretion of the trial court, and the trial court's decisions on these matters are reviewed for an abuse of discretion. *Loutts*, 298 Mich App at 25-26. "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 26 (quotation marks and citation omitted). The trial court's factual findings are reviewed for clear error, and "[a] finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made." *Id*. If we conclude that a clear error has not occurred, then we "must determine whether the dispositional ruling was fair and equitable under the circumstances of the case," and we "must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable." *Id*.

"The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). Trial courts should consider the following factors when determining whether to award spousal support:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson*, 256 Mich App at 631.]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010) (quotation marks and citation omitted). Defendant disputes only the trial court's findings concerning two of these factors: the parties' ability to work and the parties' ability to pay spousal support.

## A. THE ABILITIES OF THE PARTIES TO WORK

Concerning the parties' ability to work, the trial court found as follows:

> Defendant testified he is disabled and unable to work. He receives $870 per month from disability benefits. Defendant's bank accounts also show cash deposits totaling approximately $2,000 each month.

Plaintiff works as a marijuana grower for the Hempire Collective. The Court heard no testimony as to Plaintiff's ability to work or her health generally.

\* \* \*

[T]he evidence shows that Defendant has additional income from an unexplained source which substantially raises his yearly income to such a level that spousal support would be unnecessary.

Defendant challenges the trial court's decision to impute income "based solely upon unexplained cash deposits which the trial court unilaterally determined to be income." The trial court may impute income to a party under certain circumstances, such as when "a party has voluntarily reduced the party's income . . . . ." *Moore v Moore*, 242 Mich App 652, 655; 619 NW2d 723 (2000). However, we agree with plaintiff that, while the trial court used the term "impute," it actually made a finding that defendant had an additional source of income which he failed to report. Trial courts are free to find that a party's income is higher than reported, and this Court generally does "not second-guess the trial court's determination that [a party] presented a less than credible accounting of his finances" because the trial court "was in the best position to evaluate the credibility of the witnesses . . . ." *Stallworth v Stallworth*, 275 Mich App 282, 286; 738 NW2d 264 (2007). In this case, the trial court found that defendant's testimony that he had no additional sources of income outside of his Social Security disability benefits lacked credibility, and this finding was supported by the record. Defendant admitted that he had made regular and substantial cash deposits totaling thousands of dollars. Aside from a vague assertion about having received help from a few people, defendant never explained how he was making these deposits. Indeed, even in this appeal defendant offers no explanation for these deposits. Therefore, we will not disturb the trial court's finding that defendant underreported his income.

Defendant also argued that the trial court "utterly failed to determine [plaintiff's] ability to work or her health generally." Plaintiff testified that she worked 40 hours a week for $16 an hour. There was no additional testimony concerning her ability to work and no evidence suggesting that she had the ability to make more money. There likewise was no testimony or other evidence concerning plaintiff's health. Therefore, this argument is without merit.

### B. THE ABILITIES OF THE PARTIES TO PAY ALIMONY

Concerning the parties' ability to pay spousal support, the trial court found as follows:

Both Parties have modest incomes. According to the testimony, Plaintiff makes approximately $32,000 yearly, though neither party provided a pay stub or W-2 form or other evidence of Plaintiff's income.

Defendant makes $870 monthly equating to $10,440 a year. That puts Defendant under the federal poverty line. If the Court imputes a further income of $2,000 monthly for the various cash deposits in his bank account then he makes approximately $30,000 per year.

Defendant again disputes the trial court's finding that he had approximately $2,000 of monthly income that he failed to report. As discussed above, this argument is without merit. Defendant also argues that the trial court erred by finding that plaintiff could not pay spousal support because she supported him throughout the parties' marriage. We disagree. The trial court found that plaintiff and defendant both had "modest incomes" and that, including defendant's unexplained cash deposits, plaintiff made only slightly more than defendant. In addition, the trial court noted that plaintiff did not have the means to pay spousal support because she had substantial debt and was financially supporting her unemployed adult son. Moreover, the evidence does not support defendant's assertion that plaintiff supported him "throughout the parties' fourteen-year marriage." The parties obtained the marital home and the majority of the money used to improve the marital home through a trust established by defendant's father. Additionally, defendant contributed $870 a month through his Social Security disability benefits. Finally, even if it were true that plaintiff supported defendant for the duration of the marriage, the court's decision not to award support was based largely, while not entirely, on the fact that defendant began making additional income from an unexplained source after the parties separated. The trial court found that the unexplained additional income substantially raised his yearly income to such a level that spousal support was unnecessary. Therefore, the trial court's declination to award spousal support was not an abuse of discretion.

Affirmed.

/s/ Anica Letica
/s/ Jane E. Markey
/s/ Colleen A. O'Brien

-6-