*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BATTH INVESTMENTS LLC,

       Plaintiff-Appellant,

v

STAN MICIURA,
MICHAEL MICIURA,

       Defendants-Appellees.

UNPUBLISHED
May 30, 2024

No. 365922
Wayne Circuit Court
LC No. 19-000354-CH

Before: MALDONADO, P.J., and PATEL and N. P. HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right from a judgment after an evidentiary hearing following a remand from this Court, awarding defendants $20,400.00. Plaintiff argues that the trial court erred by (1) finding that plaintiff withheld possession of the property from defendants, and (2) awarding defendants the value of potential rental income after finding that the property was uninhabitable at the time plaintiff allegedly began withholding possession. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

This case is about competing claims of ownership of a condominium ("the property") and reasonable value of use pursuant to MCR 3.411(E). This is the third time the parties have been before this Court, and the prior appeals are detailed below.

### A. *BATTH INVESTMENTS I*: REDEMPTION PERIOD AND FORECLOSURE BY ADVERTISEMENT

The basic facts giving rise to this appeal were laid out by this Court in *Batth Investments, LLC v Miciura*, unpublished per curiam opinion of the Court of Appeals, issued April 29, 2021 (Docket No. 352642) (*Batth Investments I*), pp 1-2:

This case concerns the foreclosure of a mortgage by advertisement on a condominium located in Detroit. Angela Barney was the owner of the condominium. Barney failed to pay various condominium dues, and the condominium-assessment lien on her property was eventually foreclosed. On April 26, 2018, the condominium was sold at a sheriff's sale to defendants. At that point, Barney had a six-month redemption period, which was set to expire on October 26, 2018.

On June 4, 2018, defendants filed a summary-proceeding action against Barney to evict her from the condominium, asserting that she had failed to provide an interior inspection of the property as required under MCL 600.3237 and MCL 600.3238. On June 13, 2018, the district court entered a default judgment against Barney. On October 5, 2018, Barney moved to set aside the default judgment against her, asserting that her redemption period did not end until October 26, 2018. That same day, Barney executed a quitclaim deed in favor of plaintiff. The quitclaim deed was recorded on October 24, 2018, two days before the date on which Barney claimed that the redemption period was to expire.

Several weeks after the quitclaim deed was recorded, the district court denied Barney's motion to set aside the default judgment. The district court stated that, upon entry of the default judgment, Barney's "redemption rights were extinguished and title to the subject property vested with" defendants, citing MCL 600.3238(10).

Plaintiff subsequently sued to quiet title in the circuit court, alleging that it was the owner of the condominium under the quitclaim deed from Barney, and that it had redeemed the property on October 24, 2018. Plaintiff further alleged that defendants had refused to record the certificate of redemption and, thus, plaintiff requested an order confirming its title to the condominium. In response to plaintiff's complaint, defendants filed two separate motions for summary disposition. Both motions argued that (1) plaintiff's complaint to quiet title was an impermissible collateral attack on the district court's default judgment against Barney; (2) under MCL 600.3238(10), the district court's entry of the default judgment extinguished Barney's right to redemption automatically and vested legal and equitable title in defendants; and (3) when Barney's redemption rights were extinguished, she no longer had an interest in the property and, therefore, had nothing to convey to plaintiff by quitclaim deed. After responsive briefs from both parties, as well as and hearings on the motions, the circuit court denied defendants' motions for summary disposition.

Plaintiff subsequently filed its own motion for summary disposition, asserting that its redemption rights derived from a provision of the Condominium Act, MCL 559.101 *et seq.*, MCL 559.208(2), not MCL 600.3238 or MCL 600.3240. Plaintiff claimed that, as a result, the district court's default judgment did not extinguish its redemption rights. Plaintiff argued that, although MCL 559.208(2) requires condominium liens to be foreclosed "in the same manner" as mortgage foreclosures, MCL 559.208(2) also expressly defined redemption rights separate

from those contained within the mortgage foreclosure statute. Plaintiff argued that, although "basic mortgage foreclosure procedures," including the provision of notice and conducting a sale, had to be used when foreclosing a condominium lien, "substantive redemption rights of property owners were governed exclusively by the Condominium Act." Plaintiff, therefore, argued that when the district court entered the judgment of possession against Barney, the entry of that judgment did not impact the right of Barney or plaintiff to redeem the property under MCL 559.208(2). In response, defendants re-asserted the arguments made in their earlier motions for summary disposition.

After a hearing on plaintiff's motion, the circuit court granted summary disposition in plaintiff's favor. The circuit court also ordered plaintiff to pay defendants the property taxes that they had paid relevant to the condominium. [Alteration omitted.]

This Court reversed the trial court's decision granting summary disposition to plaintiff and awarded ownership of the Property to defendants. *Id*. at 1. The core dispute was whether the statutory provisions applicable to mortgage foreclosures by advertisement apply to the foreclosure of condominium liens. *Id*. at 3. This Court concluded that the circuit court erred when it decided that plaintiff redeemed the subject property within the six-month period of redemption, which was after the foreclosure by advertisement, and this matter was remanded to the circuit court for additional proceedings. *Id*. at 6-7. The Court reasoned that "the moment the district court entered its default judgment against Barney on June 13, 2018, her redemption rights were extinguished." *Id*. at 6.[1]

B. *BATTH INVESTMENTS II*: AWARD OF THE REASONABLE VALUE OF USE OF THE PREMISES UNDER MCR 3.411(E) WITHOUT AN EVIDENTIARY HEARING

In *Batth Investments LLC v Miciura*, unpublished opinion of the Court of Appeals, issued January 12, 2023 (Docket No. 360488) (*Batth Investments II*), p 5, this Court set forth what happened after the case was remanded:

Thereafter, on January 10, 2022, defendants filed in the circuit court a claim for reasonable value of use of the premises under MCR 3.411(E). Defendants averred that plaintiff took possession of the subject condominium in February 2020, following the circuit court's order granting plaintiff's motion for summary disposition. Further, defendants averred, on February 25, 2020, plaintiff filed a claim in the circuit court for reasonable value of use of the premises under MCR 3.411(E), which alleged that during the pendency of that action defendants "had possession of the property, depriving Plaintiff of the income and benefits of such possession for approximately one year." Plaintiff also stated in its claim that similar

---

[1] Additionally, on February 25, 2020, and during the *Batth Investments 1* appeal, Plaintiff filed a claim for reasonable value of use of premises pursuant to MCR 3.411(E). This claim was never adjudicated due to the pending appeal.

condominiums in that community were renting for $1,700 a month, and thus, plaintiff sought $1,700 a month for 12 months, totaling $20,400 from defendants. Accordingly, defendants argued, they were entitled to the same reasonable rental rate posited by plaintiff of $1,700 a month during the two-year pendency of this case, for a total of $40,800.

On February 8, 2022, plaintiff responded to defendants' claim for reasonable value of use of the premises, arguing that it never took or assumed possession of the subject property and it did not take any measure to withhold possession of the property from defendants. In fact, plaintiff argued, defendants had a default judgment of possession against Barney so defendants had continuous possession—not plaintiff. Therefore, plaintiff argued, it never withheld possession of the premises as required for recovery under MCR 3.114(E)(1) and defendants' claim must fail. Plaintiff attached to its brief an affidavit of Inderjeet Batth, a member and manager of plaintiff, which stated that plaintiff never took possession, or withheld possession, of the subject property.

On February 11, 2022, a hearing on defendants' claim for reasonable value of use of the premises was conducted by Zoom. According to the stipulated order settling a statement of facts concerning that hearing, when defendants attempted to take possession of the subject property in January 2022, it was "discovered that the locks were punched out and replaced." Plaintiff denied any knowledge about the locks being replaced and argued that it had made no attempt to change defendants' judgment of possession, made no attempt to take possession, and did not enter the property or pay fees, taxes, or assessments related to the property. In sum, plaintiff argued, it did not withhold possession of the property from defendants so it was not liable for the value of the use of the property under MCR 3.411(E). The circuit court indicated that plaintiff had the right of possession after summary disposition was granted in its favor and plaintiff responded that the right of possession is not the same as having possession. Defendants' attorney showed the court "photographs depicting a door with its locks punched out with the doorknob and lock parts on the floor" and indicated that a locksmith had to be hired to access the property. The circuit court then stated that it was taking judicial notice that plaintiff had the right of possession and, based on plaintiff's prior request for $1,700 a month from defendants, the court was "awarding that amount of lost value to Defendants for the 24-month period Plaintiff had the right to possess the property." Accordingly, the court granted defendants' claim for reasonable value of use of the premises and awarded $40,800 to defendants. [Footnote omitted.]

On appeal, plaintiff challenged the circuit court's order granting defendants' claim for the use of the property and awarding defendants $40,800.00. *Id*. at 3. Plaintiff disputed that it owed money for the use of the premises because, according to plaintiff, it never took possession of the property. *Id*. This Court reversed and remanded for additional proceedings because "no evidentiary hearing was conducted and the circuit court made no specific findings about the subject property . . . ." *Id*. at 6. Moreover, defendants did not present any evidence to establish that plaintiff "withheld possession and, if so, the reasonable value of the use of the premises." *Id*.

-4-

## C. THE INSTANT ACTION

On April 5, 2023, following remand from this Court, the trial court conducted an evidentiary hearing. Stan Miciura testified that he purchased the property at the foreclosure sale and took possession in 2018. The property was completely vacant with no personal items in it, and he went to the property about once a week until the locks were changed in February 2020. Interjeet Batth testified that plaintiff purchased the property directly from the prior owner in 2018 by a quit claim deed, and immediately following the purchase was the only time when he entered the property. Miciura testified that he did not see the person who changed the locks or ask any neighbors about it. Miciura opined that plaintiff must have had the locks changed because no one else had any reason to change them, testifying that "there's nobody else that—there's no reason for anybody to change my locks when there's no dispute with anybody else, except with Batth." When he regained possession in 2022, the property was still vacant, and Miciura changed the locks again. Batth testified that he did not change the locks and has no clue who might have changed them. No one contacted him about the locks being changed, and he first learned that defendants alleged that the locks were changed after he lost title in 2022. He denied that his prior claim for the value of the premises for a year was because he was in possession of the property. Rather, he sought a year of value because the time between the filing of the initial Complaint the filing of the claim for value was approximately one year.

Regarding the claim for the value of the premises, Miciura testified that he has a "bunch of rentals" and that he believes that the $1,700 monthly rental rate that plaintiff previously requested was about right based on market rates. Regarding the condition of the property, Miciura initially testified that, other than needing a paint job and carpet replacement, it was in good shape. However, Miciura conceded during cross-examination that the vanity in the master bathroom was damaged due to pipes freezing and a water leak, and there was another leak in the basement bathroom also caused by frozen pipes. The kitchen had no appliances, and there was damaged drywall because of the leaks. Plus, Miciura added that $39,012.48 in homeowner's association dues had accrued. Batth testified that he had other properties in the condominium project and that the property ultimately could be rented for $1,500 to $1,600 per month. However, Batth clarified that the property would need repairs before it could be rented at that monthly rate. Batth testified that he is the only employee or agent for Batth Investments, LLC. Batth testified that the master bathroom had no vanity, toilet, or door, and two leaks were coming in from the ceiling. The kitchen had no appliances—even the built-in appliances were missing. The living room had a leak from the ceiling caused by the upstairs plumbing, and the drywall needed to be repaired. The carpeting in the master bedroom needed to be replaced, and the hardwood flooring in the other bedroom needed to be finished. Batth testified that the property needed about $25,000 to $30,000 in repairs before it could be rented. Additionally, the trial court was presented with evidence during the evidentiary hearing regarding rent and value from the Zillow website. Miciura testified that he had several rentals, and that the rent for the Property would have been approximately $2,000.00 per month.

After closing arguments, the trial court concluded that after Miciura found his locks on the ground he believed he was barred from entering the property. The trial court inferred that Miciura was trying to be "a law-abiding citizen" and that once he noticed that his locks were changed, he did not go in and attempt to retake possession because the trial court had made a ruling that the

property belonged to plaintiff. The Court concluded that the $1,700 value would have been reasonable if the property was habitable at the time, but based on the testimony, the trial court found that the property was not habitable. However, the trial court noted that defendants were not permitted to enter the property to bring it up to code so it could be rented for approximately two years while *Batth Investments I* was pending.

Nevertheless, the trial court concluded that the value of the property in its current condition was $850 a month. Further, the trial court noted that during that time, property taxes were assessed, and generally, those property taxes are rolled into the rental value alongside with HOA fees. The trial court concluded that defendants were entitled to $20,400.00 because that was the value of $850 rental payments for 24 months.

This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's findings of fact for clear error. *Madison Dist Pub Schs, v Myers*, 247 Mich App 583, 588; 637 NW2d 526 (2001). "Clear error exists only when the appellate court is left with the definite and firm conviction that a mistake has been made." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471; 719 NW2d 19 (2006) (quotation marks and citation omitted).

## III. ANALYSIS

### A. WITHHOLDING POSSESSION OF THE PROPERTY

Plaintiff relies on this Court's interpretation in *Batth Investments II* opinion of MCR 3.411(E)(1), which emphasizes that for defendants to succeed on their claim, they had to prove that plaintiff occupied or exercised control over the subject property and refrained or refused to relinquish that control or occupancy to defendants. Plaintiff argues that the trial court erred by finding that plaintiff withheld possession of the property from defendants because defendants failed to prove both of those elements. We disagree.

MCR 3.411 applies to actions to determine interests in land. Defendants filed a claim pursuant MCR 3.411(E), which deals the adjudication of claims for the reasonable value of the use of premises and provides:

> (E) Claim for Reasonable Value of Use of Premises.
>
> (1) Within 28 days after the finding of title, the party found to have title to the premises may file a claim against the party who withheld possession of the premises for the reasonable value of the use of the premises during the period the premises were withheld, beginning 6 years before the action was commenced.
>
> (2) The court shall hear evidence and make findings, determining the value of the use of the premises.

(a) The findings must be based on the value of the use of the premises in their condition at the time the withholding party, or those through whom that party claims, first went into possession. The use of the buildings or improvements put on the land by the party who withheld possession may not be considered.

(b) The findings must be based on the general value of the use of the premises, not on a peculiar value the use of the premises had to the party who withheld possession or might have had to the party who had title.

In the instant case, plaintiff is challenging the court's finding that it "withheld possession" of the property. This court defined the term "withheld possession" in *Batth Investments II*:

> The court rule does not define the phrase "withheld possession," but we may consider the dictionary definitions to ascertain the plain and ordinary meaning of the words, considering the context in which they are used. Random House Webster's College Dictionary (2d ed) defines "withhold" as including "to hold back; restrain or check[;] to refrain from giving or granting" and defines "possession" as including "actual holding or occupancy, either with or without rights of ownership." And if the term "possession" is considered a legal term of art, its legal meaning is similar to its common definition. Black's Law Dictionary (7th ed) defines "possession" as including: "1. The fact of having or holding property in one's power; the exercise of dominion over property. 2. The right under which one may exercise control over something to the exclusion of all others." Therefore, *for defendants to succeed on their claim, they had to prove that plaintiff occupied or exercised control over the subject property—a condominium—and refrained or refused to relinquish that control or occupancy to defendants.* [*Batth Investments II*, unpub op at 4-5 (quotation marks, citations, and alterations omitted; emphasis added).]

Pursuant to the doctrine of the law of the case, the trial court as well as this panel are bound by the prior panel's definition of the term "withheld possession." "The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 91; 662 NW2d 387 (2003) (quotation marks and citation omitted). This "is a judicially created, self-imposed restraint designed to promote consistency throughout the life of a lawsuit." *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021). Accordingly, the task before this panel is to determine whether defendants presented sufficient evidence to establish "plaintiff occupied or exercised control over" the condominium and that plaintiff "refrained or refused to relinquish that control or occupancy to defendants."

There was no direct evidence presented at the evidentiary hearing to show that plaintiff occupied or exercised control over the property. However, the trial court did not err when it found that there enough circumstantial evidence to prove that plaintiff actually did occupy or exercise control over the property. Changing the locks is generally an exercise of control over a property that, by design, excludes everyone else from taking control or occupancy. It is undisputed that Miciura's locks were cut off *immediately after* the trial court had made a ruling that ownership belonged to plaintiff. There was no evidence of theft or vandalism to suggest potential third-party interference. There is no evidence suggesting that anybody other than plaintiff or defendant might

have changed the locks. Batth and Miciura both denied changing the locks, but the court implicitly found defendant credible and plaintiff not credible. Because the trial court is in the best position to access credibility, this Court does not second-guess credibility determinations. *Stallworth v Stallworth*, 275 Mich App 282, 286; 738 NW2d 264 (2007). Ergo, taking that it was plaintiff who changed the lock as a fulcrum, it stands to reason that plaintiff withheld possession from defendants.

Therefore, the trial court did not err by finding that plaintiff withheld possession of the property from defendants.

## B. REASONABLE VALUE OF USE

Plaintiff argues that the circuit court erred when it ordered plaintiff to pay defendants for the value of potential rental income after finding that the property was uninhabitable at the time plaintiff allegedly withheld possession. We disagree.[2]

MCR 3.411(E) governs the adjudication of claims for the reasonable value of the use of premises. Specifically, MCR 3.411(E)(2)(a) provides that "the court shall hear evidence and make findings, determining the value of the use of the premises" and that "the findings must be based on the value of the use of the premises in their condition at the time the withholding party, or those through whom that party claims, first went into possession. . . ."

The parties testified regarding the property's condition and each presented their estimated value of similar condominiums. Batth testified that he had other properties in the same condominium project and that the subject property ultimately could be rented for $1,500 to $1,600 per month. However, both parties testified that the property would need repairs before it could be rented at that monthly rate. Batth testified that the property needed about $25,000 to $30,000 in repairs before it could be rented. The court opined that the $1,700 value based on plaintiff's original claim for $1,700 a month would have been reasonable if the property was in fact habitable at the time; however, based on the testimonies presented, the trial court found that the property was not habitable. The court further reasoned that defendants were not permitted to enter the property to bring it up to code so it could be rented while the appeal was pending. Furthermore, the trial court found that regardless of the condition, there is still value in having possession of the property and noted that defendants could have made improvements to the property for the two years that they were deprived possession.

Nevertheless, the trial court found that the reasonable value of use of the property should be $850 per month "because of the fact that there needed to be repairs, in order to make it habitable." Additionally, the court noted that it did not include tax cost in the calculation because "the taxes are something that the owner of a property has to — to pay and it's not necessarily tacked on to the rental value." The court did not assess or add any additional costs, other than the

---

[2] Inasmuch as MCR 3.411(E)(2)(a) required the lower court to consider the condition of the premises when determining the value of its use, it does not call for denial of any award of damages *as a matter of law*; thus, the clear error standard should apply.

reasonable value for the use of the property, because those costs were already included in the rental value.

This Court's standard of review defers to the trial courts' judgement and pursuant to the clear error standard, this Court will not "set aside a nonjury award merely on the basis of a difference of opinion." *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002) (citation omitted). In this case, the lower court evaluated the evidence regarding the property's condition, and although the condition was assessed as uninhabitable, the court found there is still value in having possession of the property. The main purpose of purchasing the condominium unit was to produce rental income. It was not habitable at the time of purchase, but the evidence suggests that with additional repairs the property had an opportunity to generate rent. Although the property was not immediately able to be rented, it still had value in its condition because of the potential to generate rent in the near future. We conclude that the lower court did not err by taking the $1,700.00 that plaintiff requested in its original claim and cutting that amount in half based on the described condition of the property.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Sima G. Patel
/s/ Noah P. Hood