*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARQUITA MARIE SAMUEL,

        Plaintiff-Appellant,

v

DAVID ERNEST SAMUEL,

        Defendant-Appellee.

UNPUBLISHED
December 20, 2024
9:14 AM

No. 369041
Oakland Circuit Court
LC No. 2022-516186-DM

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In this divorce action, plaintiff, Marquita Marie Samuel (Marquita), appeals by right the consent judgment of divorce (JOD) and incorporated uniform child support order (UCSO), which provided a child support award that deviated from the Michigan Child Support Formula (MCSF) and required defendant, David Ernest Samuel (David), to pay $510 in monthly child support, a figure substantially lower than the $1,735 in monthly child support calculated under the MCSF. On appeal, Marquita argues that the trial court erroneously failed to adhere to the Support and Parenting Time Enforcement Act, MCL 552.601 *et seq*., in deviating from the MCSF. We disagree. The trial court complied with the applicable procedural requirements before deviating from the MCSF. We therefore affirm.

## I. BACKGROUND

In May 2014, the parties married. They share two minor children, both of whom were born during their marriage.[1] In October 2022, Marquita filed for divorce. She sought sole custody of the parties' children and a child support award in her favor per the MCSF. In December 2022, the parties participated in court-ordered mediation. They reached an ostensible settlement agreement

---

[1] David also has two other children from his previous marriage.

as reflected in a transcribed audio recording from the date of mediation.[2]  According to the mediator, Robert Badgley, the parties agreed to share joint custody of their children.  Although the parties acknowledged that Marquita would exercise more overnights than David, they agreed to deviate from the MCSF and credit David for additional overnights to account for his after-school parenting time, which alleviated the need for child care.  The parties agreed to calculate child support as if they each exercised nearly equal parenting time.  Badgley did not specify the extent to which the parties agreed to deviate from the MCSF but explained that he would notify the parties of his child support calculation at a later date and that the agreed-upon deviation was subject to approval by the trial court.  The parties stated that they understood and assented to the settlement agreement as expressed by Badgley.

After mediation took place, Badgley notified the parties that he calculated David's child support obligation as totaling $1,170 per month.  Badgley explained that he calculated the child support award based in part on the parties' respective incomes—David earned $137,500 annually, and Marquita earned $47,000 annually.  Badgley stated that he applied a second-family adjustment to account for David's children from a previous marriage and calculated the child support award as if David and Marquita exercised nearly equal parenting time.  Marquita disputed the proposed child support award as insufficient.  In the months that followed, the parties could not reach a consensus regarding the appropriate child support award.

In May 2023, the parties filed competing motions for entry of a JOD and UCSO.  David argued that the parties were bound by the terms of their mediated settlement agreement and contended that the trial court must accept Badgley's child support calculation.  Marquita, in contrast, maintained that Badgley's child support calculation was flawed and argued that the trial court should accept her proposed child support calculation.  Marquita's proposed child support calculation did not credit David for support he provided to his children from a previous marriage because, according to her, there was no court order requiring David to support the children.  It also accounted for a child care supplement in Marquita's favor.  It was further based on the parties' agreement to calculate child support as if David and Marquita exercised nearly equal parenting time.  Marquita calculated David's child support obligation as totaling $1,489 per month.

In July 2023, the trial court held a hearing regarding the parties' competing motions for entry of a JOD and UCSO.  During the hearing, Marquita stated that she was willing to accept a child support award that credited David for support he provided only to one child from his previous marriage because his other child had recently turned 18 and graduated high school.  Marquita also acknowledged that the child support award need not account for a childcare supplement in her favor because the parties' youngest child no longer attended daycare.  In light of Marquita's concessions, the trial court stated that its child support award would credit David for the support

---

[2] The transcribed audio recording was not admitted as evidence during the trial court proceedings. However, the trial court permitted Marquita's counsel to read portions of the transcript on the record over the objection of David's counsel during the August 2023 hearing regarding Marquita's motion to set aside the parties' mediated child support agreement.  To the extent that the trial court relied on the transcribed audio recording in fashioning its child support award, the parties do not challenge that aspect of its reasoning on appeal.

he provided to one child from his previous marriage and would not account for a childcare supplement in Marquita's favor. But the trial court did not calculate the corresponding child support award on the record. It instead instructed Marquita's counsel to present proofs regarding grounds for divorce. Marquita testified that the parties reached a mediated settlement agreement regarding their marital property distribution, child custody, parenting time, and child support. Marquita attested that she agreed to be bound by the terms of the parties' mediated settlement agreement, which she believed to be in the best interests of the parties' children. The trial court found that the parties' proofs justified entry of a JOD and UCSO. It then instructed Marquita's counsel to submit a proposed JOD and UCSO for entry.

Two weeks later, Marquita moved to set aside the parties' mediated child support agreement. She argued for the first time that the parties' mutual mistake justified setting aside their agreement to deviate from the MCSF. She averred that, in agreeing to deviate from the MCSF, the parties mistakenly relied on Badgley's child support calculation, which was based on the erroneous premise that she agreed to cover the cost of childcare. Marquita alternatively argued that, even if the mistake was unilateral, it warranted setting aside the parties' mediated child support agreement because it deprived the parties' children of adequate support. In response, David argued that there was no mutual mistake because the parties agreed that child support would be calculated based on the parties' respective incomes and as if they exercised nearly equal parenting time. David maintained that, in reaching his child support calculation, Badgley did not attribute childcare costs to either party. He concluded that the parties' mediated child support agreement was binding because the parties knew that the child support award would deviate from the MCSF.

In August 2023, the trial court held a hearing regarding Marquita's motion to set aside the parties' mediated child support agreement. During the hearing, David's counsel conceded that Badgley based his child support calculation on the erroneous premise that Marquita agreed to cover the cost of childcare. David's counsel argued that, rather than setting aside the entire mediated settlement agreement, the trial court should simply calculate child support without accounting for child care costs to reflect the parties' true agreement. Marquita's counsel countered that the parties relied on Badgley's erroneous child support calculation in reaching their mediated settlement agreement such that it was based on a mutual mistake and should not be enforced. Marquita's counsel also contended that the parties did not reach an agreement regarding the actual number of overnights David would have such that the trial court could not determine the extent to which any deviation from the MCSF was warranted. The trial court denied Marquita's motion. It recognized that the parties no longer incurred child care costs. It also reasoned that the parties' mediated child support agreement was binding because the parties agreed on the record that child support would be calculated as if David exercised nearly equal parenting time.

In September 2023, the trial court entered the JOD, UCSO, and an accompanying MCSF deviation addendum. The trial court calculated Marquita's child support award under the MCSF as totaling $1,735 per month.[3] The trial court deviated from that figure and instead awarded

_____

[3] The trial court's written entry in the deviation addendum provides that Marquita's child support award under the MCSF totaled $1,753 per month. This appears to be a typographical error. The

Marquita $510 in monthly child support. The MCSF deviation addendum provided that applying the MCSF was unjust or inappropriate because "[David] provides a substantial amount of the children['s] day-time care and directly contributes toward a significantly greater share of the children['s] cost than those reflected by the overnights used to calculate the offset for parental time. 2021 Michigan Child Support Formula Manual 1.04(E)(15)." It also provided that the UCSO deviated from the MCSF as follows:

> The child support order awards [David] 182 overnights with the minor children because the parties agreed to give him credit for those days that he picks the children up from school and feeds them dinner and does homework with them. [David's] actual number of overnights is 70. Under the child support formula, [David] would be paying [Marquita] $17[35].00 per month. The Uniform Child Support Order has [David] paying [Marquita] $510.00 per month.

The deviation addendum further provided that there was no applicable property or other support awarded in lieu of child support. This appeal followed.

## II. STANDARDS OF REVIEW

"Child support orders and the modification of such orders are reviewed for an abuse of discretion." *Peterson v Peterson*, 272 Mich App 511, 515; 727 NW2d 393 (2006). "An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007) (quotation marks and citation omitted). "We review for clear error . . . the trial court's factual findings underlying its determination of a child-support award." *Id.*; see also MCR 2.613(C). "A finding is clearly erroneous if this Court, on all the evidence, is left with a definite and firm conviction that a mistake was made . . . ." *Stallworth*, 275 Mich App at 284. In reviewing factual findings, this Court must give regard to "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C).

"Whether a trial court properly operated within the statutory framework relative to child support calculations and any deviation from the child support formula are reviewed de novo as questions of law." *Peterson*, 272 Mich App at 516. See also *Stallworth*, 275 Mich App at 284. Further, a "divorce judgment entered upon the settlement of the parties . . . represents a contract, which, if unambiguous, is to be interpreted as a question of law" subject to review de novo. *Holmes v Holmes*, 281 Mich App 575, 587; 760 NW2d 300 (2008) (quotation marks and citation omitted). "A consent judgment is treated as a contract and is interpreted as such. We interpret contracts according to their plain language and enforce them as written." *Brendel v Morris*, 345 Mich App 138, 146; 4 NW3d 776 (2023).

## III. ANALYSIS

---

accompanying MCSF calculator results provide that Marquita's child support award under the MCSF totaled $1,735 per month.

Marquita argues that the trial court erroneously failed to adhere to the Support and Parenting Time Enforcement Act, MCL 552.601 *et seq.*, in deviating from the MCSF. We disagree.

"It is well settled that children have the right to receive financial support from their parents and that trial courts may enforce that right by ordering parents to pay child support." *Burowsky v Burowsky*, 273 Mich App 666, 672-673; 733 NW2d 71 (2007). It is also "a well-established principle in Michigan that parties cannot bargain away their children's right to support." *Laffin v Laffin*, 280 Mich App 513, 518; 760 NW2d 738 (2008). Indeed, "[t]his Court strongly disfavors deviations from the child support formula premised on private agreements that limit a parent's obligation to pay child support." *Holmes*, 281 Mich App at 590 (emphasis omitted). MCL 552.605(2) provides a safeguard to "ensure that a child support order is just, even if the parties agree to a support order that deviates from the guidelines." *Laffin*, 280 Mich App at 520.

In fashioning a child support award, a trial court must strictly comply with the requirements of the MCSF unless it determines from the facts of the case that the application of the MCSF would be unjust or inappropriate. *Burowsky*, 273 Mich App at 673. See also MCL 552.605(2). If a trial court exercises its discretion to deviate from the MCSF, it must make a record regarding the statutory criteria for doing so. *Stallworth*, 275 Mich App at 284. Namely, MCL 552.605 provides, in relevant part:

> (2) Except as otherwise provided in this section, the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau as required in section 19 of the friend of the court act, MCL 552.519. The court may enter an order that deviates from the formula if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record all of the following:
>
> (a) The child support amount determined by application of the child support formula.
>
> (b) How the child support order deviates from the child support formula.
>
> (c) The value of property or other support awarded instead of the payment of child support, if applicable.
>
> (d) The reasons why application of the child support formula would be unjust or inappropriate in the case.
>
> (3) Subsection (2) does not prohibit the court from entering a child support order that is agreed to by the parties and that deviates from the child support formula, if the requirements of subsection (2) are met. [MCL 552.602(2) and (3).]

Here, the parties reached a mediated settlement agreement regarding their marital property distribution, child custody, parenting time, and child support. They agreed to exercise joint custody of their children. They also agreed to deviate from the MCSF and calculate child support

as if David exercised additional overnights with the children to account for his after-school parenting time, which alleviated the need for child care. During a later hearing at which the parties presented proofs regarding the grounds for their divorce, Marquita testified that the parties reached a mediated settlement agreement that served their children's best interests. Although the parties did not address the corresponding child support award on the record, Marquita attested that she agreed to be bound by the terms of the parties' mediated settlement agreement. On the basis of the testimony presented, the trial court found that the proofs justified entry of a JOD and UCSO.

The trial court subsequently entered a JOD, UCSO, and accompanying MCSF deviation addendum in accordance with MCL 552.605. The deviation addendum provided that Marquita's child support award as determined by application of the MCSF would be $1,735 per month. It stated that Marquita's actual child support award was $510, which deviated from the MCSF to credit David "for those days that he picks the children up from school and feeds them dinner and does homework with them." The deviation addendum also provided that applying the MCSF was unjust or inappropriate because "[David] provides a substantial amount of the children['s] day-time care and directly contributes toward a significantly greater share of the children['s] cost than those reflected by the overnights used to calculate the offset for parental time." It further provided that there was no applicable property or other support awarded in lieu of child support.

In sum, the trial court adhered to MCL 552.605 in deviating from the MCSF. Although the parties could not bargain away their children's right to child support, MCL 552.605(3) specifically permitted the trial court to enter a child support award that deviated from the MCSF based on the parties' agreement, provided that the trial court complied with MCL 552.605(2). The trial court did so by addressing in writing the child support award as determined by the MCSF, the manner in which the actual child support award deviated from that figure, the reasons why the application of the MCSF was unjust or inappropriate, and that there was no property or other support awarded in lieu of child support. Although the trial court did not address the specific child support award on the record, the UCSO and accompanying deviation addendum set forth in writing each criterion required under MCL 552.605(2). Marquita's claim that the trial court failed to adhere to MCL 552.605 in deviating from the MCSF therefore lacks merit.

We affirm.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica

-6-